PEOPLE ex rel. WHITE v. BOARD OF ALDERMEN OF CITY OF BUF-
FALO et al.

(Supreme Court, Appellate Division, Fourth Department.    June 18, 1898.)

1. ELECTIONS—CONTESTS—MANDAMUS—JURISDICTION.
    Laws 1896, c. 909, § 114, provides that if any certified original statement
    of the result of a canvass in an election district shall show that any of
    the ballots counted were objected to as marked for identification, a writ
    of mandamus may issue, on application of a candidate, out of the supreme
    court, requiring a recount of the vote on such ballots, and, if the court
    shall determine that any such ballots were marked for identification, it
    shall order such ballots, and the votes thereon, to be excluded on a re-
    count.    Held, that the inspectors' failure to indorse on ballots the words,
    "Objected to because marked for identification,". as required by section .
    110, subd. 3, would not devest the court of jurisdiction.
2. SAME—RECOUNT—REJECTION OF BALLOTS.
    Since such statute does not devest the court of its common-law juris-
    diction therein, the court may, in such a proceeding, inspect the ballots,
    and, without taking proof as to the purpose of marks on certain ballots
    rendering them void, order a recount directing their rejection.
3. SAME—BALLOTS—INDORSEMENTS—RETURN OF INSPECTORS.
    In such proceeding, where ballots were indorsed as objected to without
    assignment of reasons therefor, the return of the election inspectors that
    they were objected to because marked for identification may be considered
    to explain the indorsements.
4. APPEAL—REVIEW—REASON FOR DECISION.
    An order properly made at special term will not be reversed because a
    wrong reason was assigned therefor.

Appeal from special term, Erie county.
    Mandamus by the people, on the relation of John White, against
the board of aldermen of the city of Buffalo, constituting the board
of canvassers of that city, and John Barry and James Coyle, two
of the inspectors of election of the Third election district of the
First ward of the city of Buffalo.    From an order awarding a
peremptory writ, defendants Barry and Coyle appeal.    Affirmed.
    This appeal was from an order of the special term entered in the Erie
county clerk's office on the 19th day of January, 1898, directing that a
peremptory writ of mandamus issue, commanding the inspectors of election
of the said district to convene and sign an original statement giving the cor-
rect result of an election held in said district on the 2d day of November,
1897, and to exclude from the ballots counted eight ballots adjudged by the
court to be void, and to count no vote thereon for any person.    The Republican
candidate for alderman of the First ward voted for at that election was
John White.    The Democratic candidate was John Sheehan.    The inspectors
made a return which gave White 152 votes, and Sheehan 176 votes, polled
in that district for that office.    Controversy arose over eight ballots known
in the case as Exhibits 1 to 8, inclusive.    These ballots were printed as re-
quired by chapter 909 of the Laws of 1896, being the general election law,
and being the one governing the election of November 2, 1897.    The first
three tickets printed on the ballots were the Republican, Democratic, and the

National Democratic tickets. in the order named. Under the head of "Alderman" in the National Democratic ticket there was no nomination.

Exhibit 1 has a cross in the circle at the top of the Democratic ticket, and a cross opposite the name of John Sheehan for alderman, but that is placed in the voting space at the right of his name, and to the left of the office of alderman in the National Democratic ticket. There are marks of lead penciling in the blank column under the title of "Judge of the Municipal Court."

Exhibit 2 has no cross or mark in the voting circle at the head of any ticket, but crosses appear opposite nearly every name on the Republican ticket except that of John White for alderman; but all these crosses were outside of the voting space, and between it and the name of the candidate, and on the left of such names. Three crosses appear on the Democratic ticket. One to the left of the name of John Sheehan for alderman, but between that name and the voting space on the left. The other two crosses are similarly placed as to the other candidates. A pencil mark is found on the National Democratic ticket near the name of Alton B. Parker for chief judge of the court of appeals.

In Exhibit 3 a cross is in the circle at the head of the Democratic ticket, and a cross in the voting space to the right of John Sheehan for alderman, and to the left of the blank for alderman, in the National Democratic ticket. Crosses are also opposite and to the right of other names on the Democratic ticket and on the left of blanks in the National Democratic ticket. Several pencil marks appear upon the face of this ballot.

In Exhibit 4 there is a cross in the circle at the head of the Democratic ticket; also a cross at the right of the name of John White for alderman, and between his name and the voting space to the right; and to the left of John Sheehan for alderman there is also a cross. Similar crosses appear as to the names of two other candidates on the ticket. Several pencil marks appear connecting the two names over the crosses and the voting space, the same as to the other candidates.

In Exhibit 5 there is a cross in the circle at the top of the Democratic ticket, being the only cross upon the ticket. The pencil mark is drawn across the name of John Sheehan for alderman on the Democratic ticket, and directly under it in pencil is written, "Jno. White." There is a pencil mark on the Socialist Labor ticket in the blank for coroner.

In Exhibit 6 there is a cross in the circle at the head of the Republican ticket, and crosses to the left of several candidates on the same ticket, between their names and the voting space on the left, and a similar cross opposite a candidate on the Democratic ticket, between his name and the voting space; none of these crosses being within the voting space.

Exhibit 7 is an entirely blank ballot, without marks, crosses, or erasures of any kind.

In Exhibit 8 there are crosses in the voting spaces opposite the names and to the left of several candidates on the Republican ticket, but none to the left of John White; also crosses to the left of the names of several candidates on the Democratic ticket, all made in the voting spaces, including a cross to the left of the name of John Sheehan for alderman. In the voting space at the right of John Sheehan, and on the left of the space in which it was stated, "For Alderman, no Nomination," in the National Democratic ticket, was black penciling, filling the entire voting space, but indicating nothing.

These are all the marks or crosses that appear upon these ballots, all of said crosses being cross X marks.

It appears by the affidavits of Dennis J. Breen and William Straker, two of the inspectors of election, that an inspector or a watcher at the polls objected to the said ballots, respectively, while they were being counted, "as marked for identification." This statement is not fully denied by the return of the other two inspectors, but they do deny substantially that the inspectors marked on said ballot that they were protested "as marked for identification." But it appears from the ballots that the inspectors Dennis J. Breen, James Coyle, John Barry, and William Straker signed indorsements made by them as follows: Exhibits 2 and 5, the words, "Counted under protest;" Exhibits 4, 6, and 8, the words, "Entire ballot counted under protest." On Exhibit 1, the statement was, "Protested on vote for alderman;" on

Exhibit 3, "Protested on vote for assembly and ward officers;" on Exhibit 7, "Entirely blank."

These were all the statements made by the inspectors upon the ballots, but in their official statement of the returns of the election in the said district appears the following: "The number of general ballots protested as marked for identification (all of which are in the sealed package returned herewith, together with the void ballots), each of which has been indorsed by us, 'Protested as marked for identification,' the mark or marks to which objections were made being specified upon the back of each of such ballots, and all of which were counted for the several candidates voted thereon." This particular part of the general return was signed by but two of the inspectors, but it is upon a sheet which is embraced in the general return, and that general return was signed by a majority of the inspectors.

Upon the affidavit of the relator, John White, and of Dennis J. Breen and William Straker, inspectors, the Erie special term, on the 22d day of November, 1897, made an order directing a writ of alternative mandamus to issue to the board of aldermen of the city of Buffalo, and to the inspectors of the Third election district, commanding the board of aldermen not to canvass the votes of the First ward of Buffalo for alderman until the recount of the votes in the Third district of the First ward of the city should be had and made by the inspectors, which they were required to do, and to exclude from such recount the eight ballots in question. The appellants, as inspectors of the district, made return to this writ, making certain denials, which are not important here, and making the denial as to the indorsements upon the ballots as has been stated, and alleging that the vote of said district was correctly canvassed. The writ and the return came before the special term in Erie county on the 19th of January, 1898, and, apparently by the consent of the parties, the questions arising upon the writ and the return were argued before the judge holding the special term; no objection being made, so far as the record discloses, that there were issues arising upon the writ and the return which should be tried as in an action. The court proceeded to dispose of the question, and required the production of the ballots in question from the clerk's office of Erie county, to which the record discloses no objection; and, after examining the ballots, the court, on the 19th of January, 1898, made an order reciting the proceedings, and which contains the following statement: "And the issues raised thereon [the alternative writ and the return] having been brought on for argument before the Hon. John S. Lambert at a special term of this court held this day, and an order having been made requiring the right ballots referred to in said alternative writ and in said return to be produced before the said justice, and the same having been duly produced and examined, after hearing Seward A. Simons, the attorney for the relator, and Moses Shire and Edward L. Jellinek, counsel for the defendants Barry and Coyle, it is ordered, and I find and decide, that the said eight ballots are, and each of them is hereby, determined and declared to be marked for the purpose of identification, and hereby adjudged void ballots; and that a peremptory writ of mandamus issue out of this court directing and commanding [the inspectors, naming them,] to convene [fixing the time and place], and make and sign an original statement as required by law, giving the true and correct result of said election, in the said Third election district of the said First ward, and that the said inspectors exclude in said canvass and return the said eight ballots so produced and declared by the court hereinbefore as marked for identification, and hereby adjudged void ballots, and count no vote thereon for any person." And they were further required to file such statement as required by law; and the order further directed the board of aldermen, upon such filing, to proceed to canvass and return the votes in the manner provided by law. This statement was signed by Judge Lambert. A peremptory writ was issued in pursuance of said order.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Edward L. Jellinek, for appellants.
Seward A. Simons, for respondent.

WARD, J. There is some confusion in the case with reference to the blank ballot. The return of the inspectors of the Third election district of the First ward of Buffalo, whose acts are challenged as to the result of the election of the 2d of November, 1897, states that there was one blank ballot, which was not counted. Their return, as above given, states that there were eight ballots which were protested as being marked for identification. The record of this appeal does not give a copy of the ballots, or of the marks thereon which it is alleged invalidate them, but we were presented upon the argument with the return of the inspectors and the original ballots, which included Exhibit No. 7 (the blank ballot); but it appears plain that eight defective ballots were counted and embraced within the result, taking the record altogether.

The proceeding by mandamus, out of which this appeal grew, seems to have been taken under section 114 of chapter 909 of the election law of 1896, from which we quote:

"If any certified original statement of the result of the canvass in an election district shall show that any of the ballots counted at an election therein was objected to as marked for identification, a writ of mandamus may, upon the application of any candidate voted for at such election in such district within twenty days thereafter, issue out of the supreme court to the board or body of canvassers, if any, of the return of the inspectors of such election district, and otherwise to the inspectors of election making such statement requiring a recount of the vote on such ballots. If the court shall, in the proceeding upon such writ, determine that any such ballots were marked for the purpose of identification, the court shall order such ballots and the votes thereon to be excluded upon a recount of such votes."

A like proceeding was authorized if votes had been rejected as void that should have been counted.

The appellants' first point is that subdivision 3 of section 110, requiring, when a ballot is not void and the ballot is challenged as having been marked for the purpose of identification, that the inspectors should write upon the back of said ballot the words, "Objected to because marked for identification," and specifying such mark or marking, and to sign the statement, had not been complied with, and therefore the case did not come within section 114. While the statute requires this formula on the part of the inspectors, it is not essential to give the court jurisdiction of the proceedings. Section 114 confers jurisdiction if the certified original statement of the result of the canvass shows that any of the ballots counted by them were objected to as marked for identification. It is true that that statement of the return is not in words borne out by the indorsements upon the ballots, but, as has been stated, the objections were in fact made upon the counting of the ballots, by the person authorized to make such objections (an inspector or a watcher at the polls); and, in determining what the entries meant upon the ballots, they may be taken in connection with the return, and it thus appeared that the protests referred to in the indorsements related to the marks for identification.

The appellants also make the point that there was no proof taken as to the purpose of the marks; that the court simply in-

spected the ballots, and made the order thereon. It will be seen from the statement of the marks and crosses upon all the exhibits except the blank ballot that the inspection which the court made was sufficient to show that the ballots were illegal and void, and should not be counted, and that they came within the condemnation of section 105 of the election law, from which we quote:

"It shall not be lawful to make any mark upon the official ballot other than the cross X mark used for the purpose of voting with a pencil having black lead and that only in the circles or in the voting spaces to the left of the names of candidates, or to write anything thereon other than the name or names of persons not printed upon the ballot for whom the elector desires to vote in the blank column under the proper title for the office; nor shall it be lawful to deface or tear a ballot in any manner nor to erase any printed device, figure, letter or word therefrom, nor to erase any name or mark written thereon by such elector. Any ballot upon which there shall be found any mark other than the cross X mark used for the purpose of voting or a name or names written otherwise than as heretofore provided and any ballot which shall be found to be defaced or torn or from which there shall have been erased any device, figure, letter or word or which shall have been marked or written upon other than by a pencil having a black lead shall be wholly void and no vote thereon shall be counted."

If any of the prohibited marks or other acts appear upon the face of the ballot, it is void by the terms of the statute, and the court is not permitted to consult the intention of the voter with reference to such marks or crosses. The purity of the ballot depends to such an extent upon observing the forms prescribed by the legislature to prevent corruption in the suffrage, and to prevent means by which the voters may be identified by the votes, that the forms prescribed by the statute should be strictly observed in counting ballots. In People v. Collin, 19 App. Div. 457, 46 N. Y. Supp. 701, the Third department of the appellate division had occasion to consider the question whether the placing of a cross X mark before the name of a candidate, but not in the voting space prescribed by statute, made the ballot void. Parker, P. J., speaking for the court in a well-considered opinion, held it made the ballot void under the section of the statute we have quoted. Upon appeal to the court of appeals, the decision was affirmed. 154 N. Y. 750, 49 N. E. 1102. And see, also, People v. Morgan, 20 App. Div. 48, 46 N. Y. Supp. 898. As strongly sustaining these conclusions, see People v. Board of Canvassers of Richmond Co., 156 N. Y. 36, 50 N. E. 425.

But the learned counsel for the appellants contends that in this proceeding the court had only jurisdiction to direct a recount of the ballots upon its becoming established that the marks upon the ballots were for the purpose of identification, and that the statute under which this proceeding is instituted treats these ballots as not void, but as voidable only, and therefore the fact that the inspection of the ballots disclosed that they were void would not justify the court in this proceeding to order a recount. This is entirely too narrow a view to entertain of this proceeding. The petition and affidavits brought up the return of the inspectors and the ballots, and they were before the court, and upon the facts

presented the court was at liberty, not only to exercise its statutory, but its common-law, jurisdiction under the writ of mandamus. The statutes authorizing mandamus proceedings with reference to elections do not assume to devest, neither do they devest, the court of its common-law jurisdiction in election cases. The Code of Civil Procedure does not define the cases in which the writ of mandamus will lie. It simply regulates the procedure. The writ of mandamus is an ancient common-law writ. The relator must have the right to a performance of some particular act or duty at the hands of the respondent, and the case must be one in which the law affords no adequate remedy to secure the enforcement of the right and the performance of the duty which it is sought to coerce. People v. Supervisors of Greene, 12 Barb. 217. And this is subject to the restriction that this must be a right to have the act performed by some corporation, officer, or board, or by an inferior court. Dunklin Co. v. District Co. Ct. of Dunklin Co., 23 Mo. 449; Fiero, Spec. Proc. 40, 41. Mandamus to election officers to compel them to do their duty, in cases where they have no discretion, has frequently issued in this state. People v. Schiellein, 95 N. Y. 124, and cases cited on pages 133, 134; People v. Richmond (Sup.) 25 N. Y. Supp. 144–150; Gleason v. Blanc (Sup.) 36 N. Y. Supp. 938.

The statute pronounces these ballots void, and it was therefore the duty of the inspectors of election to have rejected them. They violated their duty in including them within the count of ballots' of electors. It was the plain right of the relator to have these votes rejected. He has no adequate remedy at law. His proper, and perhaps only, remedy is by mandamus. The common-law jurisdiction of the court came in aid of the statute. But the statute (section 114) should be liberally construed with reference to the objects sought to be attained by it. The purpose was to eliminate void ballots from the count, whether those ballots were. void because they were marked for identification or for any other reason. If the order of the special term is to be construed as basing its decision that the ballots were void upon the ground that they were marked for identification, and that reason should turn out to be not established by the proofs presented to the court, it does not vitiate the order appealed from. If a wrong reason was given by the special term for the order it made, the order may still be maintained, inasmuch as the result of the order was right and it was authorized by law.

Under election statutes superseded by the present one, some discussion has arisen in the courts as to how far the intent of the voter must be proved to mark his ballot for identification before it can be rejected. People v. Board of Sup'rs of Dutchess Co., 135 N. Y. 522, 32 N. E. 242; People v. Board of Canvassers of Onondaga Co., 129 N. Y. 407, 29 N. E. 327; People v. Shaw, 64 Hun, 361, 19 N. Y. Supp. 302. We do not deem it necessary to determine the question whether the court, under the present statute, may regard all marks not authorized by statute as made for the purpose of identification, as

we have found a sufficient reason to sustain the order appealed from upon the ground that the ballots were void, and in no sense voidable. The order appealed from should be affirmed, with costs. All concur.