PEOPLE ex rel. BRINK v. WAY et al.

(Supreme Court, Appellate Division, Third Department. March 2, 1904.)

1. ELECTION—CANVASS OF VOTE—IRREGULARITY—MANDAMUS.

　　Where election officers, in canvassing a vote, failed to follow the method prescribed by the Election Law (Laws 1896, pp. 940, 953, c. 909, §§ 84, 103; and Laws 1896, p. 961, c. 909, § 110, subd. 3, as amended by Laws 1898, p. 972, c. 335), and the proof is not reasonably clear that the count was honest and correct, it is within the discretion of a court to issue a writ of mandamus requiring the election officers to recanvass the vote.

¶ 1. See Mandamus, vol. 33, Cent. Dig. § 154.

2. SAME—STATUTORY PROVISION—COMMON-LAW JURISDICTION.
    Statutory provisions authorizing mandamus proceedings in election cases do not divest the court of its common-law jurisdiction to issue a writ of mandamus commanding the inspectors of election to convene and perform their duties as prescribed by statute.

Appeal from Special Term, Rensselaer County.

Action by the people, on the relation of Joel Brink, against Eugene Way and others. From an order directing that a peremptory writ of mandamus issue, the defendants appeal. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Linson & Van Buren (Augustus H. Van Buren, of counsel), for appellants.

W. N. Gill (Howard Chipp, of counsel), for respondent.

CHASE, J. The relator, Brink, and the defendant McNamee were respectively the Republican and Democratic candidates for the office of supervisor of the town of Ulster, Ulster county, at the biennial town election held with the general election, November 3, 1903.

The town of Ulster is composed of four election districts. The returns from said election districts were canvassed by the justices of the peace and town clerk of said town, and said justices of the peace and town clerk found that 333 votes had been cast for Brink and 334 votes for McNamee. According to the returns filed from the Fourth Election District of said town, 207 votes were cast for supervisor, of which 11 were for Brink and 196 for McNamee, and such returns show that there were 99 split ballots cast in said election district, but that none of the ballots cast were blank, or were rejected as void, or marked for identification.

By subdivision 3, of section 110 of the Election Law (chapter 909, p. 961, Laws 1896 as amended by chapter 335, p. 972, Laws 1898) it is provided:

"The method of counting shall be as follows: The straight ballots, that is, the ballots on which all the candidates on one party ticket and no others are voted for shall be separated from the split ballots and counted, and the number of straight party votes for each candidate shall be entered in gross opposite his name on each tally sheet by the poll clerk keeping the same. The chairman of the board shall then take the split ballots separately, and announce the vote for each candidate on each such ballot, in the order of the offices printed thereon, and each poll clerk shall make an accurate tally of the same. As the votes on each split ballot are counted, such ballot shall be passed to the other inspectors for verification. The poll clerks shall then add together all the votes for each candidate and the ballots wholly blank and void, together with the ballots on which no votes were counted for any candidate for such office, and shall enter the sum thereof in the proper column on the tally sheet. As soon as the count is completed for each office, the poll clerk shall submit the result to the inspectors for examination, and if found to be correct, the chairman shall at once announce the result."

By section 84 of said Election Law (Laws 1896, p. 940, c. 909) it is provided:

"Opposite and to the right of each party or independent ticket or list of candidates shall be a column headed 'Number of votes cast, and counted for each candidate on straight ballots,' in which column and opposite every name shall

be entered the number of straight party votes counted (which number is the same for every candidate of that party). To the right of such column there shall be another column headed 'Number of votes cast and counted for each candidate on split ballots,' and in such column shall be entered by single marks, grouped into five marks, the votes canvassed for such candidates on the split ballots. To the right of such column shall be another column headed, 'Total number of votes cast and counted for each candidate' in which shall be entered, opposite the name of each candidate the total number of votes cast and counted for such candidate on both straight and split ballots."

By section 103 of said Election Law (Laws 1896, p. 953, c. 909) it is provided:

"The poll clerks shall also during the canvass of the votes as prescribed by section one hundred and ten of the election law, make and complete the tally sheets of the votes in the form provided by section eighty-four of the election law."

When town meetings are held at the time of the general election, the duty of inspectors in canvassing the vote for town offices is the same as their duty in canvassing the vote for other candidates. See chapter 363, p. 1042, Laws 1898, as amended by chapter 391, p. 1063, Laws 1901. It is also provided that the statement of votes cast for town offices shall be made in the same form as the statement by such inspectors of the votes cast for other offices at the general elections. See chapter 82, p. 129, Laws 1893, as amended by chapter 456, p. 943, Laws 1893, and chapter 481, p. 610, Laws 1897, and chapter 168, p. 321, Laws 1899.

The relator alleges that the canvass in said Fourth District "was not conducted in the manner prescribed by the statute, in that the chairman of the board of inspectors did not take the split ballots separately and announce the vote for each candidate on each such ballot, in the order of the offices printed thereon, and the poll clerks did not make any tally of the same, nor was any of the split ballots passed to the other inspectors for verification; but the split ballots were read off by one of the inspectors, * * * who was not the chairman, and they were tallied by inspectors," and not by the poll clerks. The relator also alleges that the original tally sheet from said district "is not filled out in the manner required by law, in that it does not contain, opposite the name of Joel Brink or any other candidate on the Republican ticket, under a column headed 'Number of votes cast and counted for each candidate on straight ballots,' an entry of the number of straight party votes counted; nor does it contain, under another column headed 'Number of votes cast and counted for each candidate on split ballots,' entered by single marks grouped into five marks, the votes canvassed for said Joel Brink for the office of supervisor, but instead thereof there appears in such column the words 'Eleven votes,' written in such column over something which has been erased therefrom." The facts on which such allegations are based are stated with some detail in the affidavits filed by the relator. The answering affidavits, so far as they relate to the above-mentioned allegations of the relator, are not specific, but are indefinite, general statements, or mere conclusions of law or fact. They are not sufficient as denials to make an issue of fact. People ex rel. Beck v. Coler, 34 App. Div. 167, 54 N. Y. Supp. 639. The relator produces affidavits of

14 persons, not including either of the inspectors, ballot or poll clerks, or watchers, who severally state that they voted in said election district on said day for the relator for supervisor. The relator also alleges that one of the watchers was compelled by force to leave the room in which the election was held; that persons voted who had not been registered; that at least 24 votes were cast in said election district for him as a candidate for supervisor; that, by error or design, some of said votes so cast for him were erroneously counted for said McNamee; that said McNamee handled some of the tickets voted in said election district during the canvass thereof; that statements were made by him and by the inspectors, during and after the canvass, inconsistent with the returns filed by the inspectors; and other statements are made in the moving affidavits, tending to discredit said returns, all of which statements, however, are denied by the defendants.

No question is raised in the affidavits before the court but that the ballots voted were replaced in the box from which they were taken, and have been preserved inviolate as required by statute, and that the same can now be recounted and recanvassed under the same conditions that existed at the time when they were counted, immediately following the close of the polls on election day. The order appealed from directs that the town clerk deliver the box containing said ballots to the board of inspectors; that the poll clerks and inspectors convene, open said box, and recount and recanvass said ballots, in the manner directed by the statute, so far as they relate to the office of supervisor, and make a return thereof as required by statute, and that the board of town canvassers reconvene and recanvass the vote of said election district from the corrected returns so to be made by said board of inspectors after such recount and recanvass. The court, at Special Term, exercised its discretion in favor of directing that a peremptory mandamus issue. The rule that a mandamus will not be granted where the party has a remedy by action is one addressed to the sound discretion of the court, and is not of universal application. People ex rel. Beck v. Coler, supra; People ex rel. Maxim v. Ward, 62 App. Div. 531, 71 N. Y. Supp. 76. As a general rule, mere irregularities in the mode of canvassing the vote of an election and making a return thereof will not vitiate an election. People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451. When irregularities are the result of ignorance or inadvertence, and they do not affect the result of an election, the court may refuse to take any action for the purpose of compelling a recanvass of the vote in the specific manner directed by the statute. The provisions of the statute relating to the manner of canvassing and returning the vote of an election, however, are for the purpose of preventing fraud and mis take. Such directions to inspectors and poll clerks should be complied with, and where irregularities relating thereto afford an opportunity for fraud or mistake in counting the votes, and the proof is not reasonably clear that the count was honest and correct, an order of the court at Special Term directing a recount and recanvass of the vote should not be reversed on appeal. The statutory directions for the preservation of the ballots are for the purpose of retaining the evidence, which will conclusively show whether an error has been made in the

canvass. We repeat what was said by this court in People ex rel. Maxim v. Ward, supra:

"All proof of errors committed by the board of canvassers in the count of the ballots, if any errors were committed, is contained in that ballot box. The contents of the box, and hence all the proof, is at the disposal of the court, and subject to its mandate."

. The vote was not counted or returned in accordance with the statute. Matter of Larkin, 46 App. Div. 366, 61 N. Y. Supp. 597. It was the duty of the inspectors and poll clerks to canvass the vote in the manner provided by statute, and, until they have so counted the vote, the duty imposed upon them as ministerial officers has not been performed.
It was said in Bradhurst v. First G. S.-W. T. R. Co., 16 Johns. 8:

"It has been frequently decided that, when the Legislature confer a power on any inferior tribunal, the exercise of which may affect the rights of person or property, notwithstanding their decision may be declared to be final, yet this court, like that of the Court of King's Bench, has a general superintending control over its proceedings."

The courts not only frequently so decided prior to that early day, but have continued to so decide to the present time. 10 Amer. & Eng. Ency. of Law, p. 807; People ex rel. Sanderson v. Payne, 12 Abb. N. C. 103; People ex rel. Ranton v. City of Syracuse. 88 Hun, 203, 34 N. Y. Supp. 661; People ex rel. Nicholls v. Board of Canvassers, 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624; People ex rel. White v. Aldermen, 31 App. Div. 438, 52 N. Y. Supp. 643; Id., 157 N. Y. 431, 52 N. E. 181; Baird v. Supervisors, 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. 81; People ex rel. Harris v. Commissioners, 149 N. Y. 26, 43 N. E. 418; Matter of Stewart, 155 N. Y. 545, 50 N. E. 51; People ex rel. Maxim v. Ward, supra; Matter of Larkin, supra; People ex rel. Perry v. Board of Canvassers, 88 App. Div. 185, 84 N. Y. Supp. 406.

The statutory provisions authorizing proceedings by mandamus in election cases do not divest the court of its common-law jurisdiction to issue a writ of mandamus commanding the inspectors of election to convene and perform their duties as prescribed by statute. People ex rel. White v. Aldermen, supra; Matter of Stewart, supra.

The order should be affirmed, with $10 costs and disbursements. All concur.