THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN F. McCOURT, as a Voter and as Chairman of the Board of County Canvassers of the County of New York, Respondent, *v.* JOHN J. WHALEN and Others, Constituting the Canvassing Inspectors of the Eleventh Election District of the Third Assembly District, and JOHN R. VOORHIS and Others, Constituting the Board of Elections of the City of New York, New York County, and WILLIAM F. SCHNEIDER, County Clerk of the County of New York, Defendants, Impleaded with REPUBLICAN COUNTY COMMITTEE and REPUBLICAN NOMINEES, Intervenors, Appellants.

First Department, December 18, 1920.*

Elections — canvass of ballots — failure of canvassing inspectors to fill out triplicate returns and keep tally sheets — peremptory mandamus to compel production of ballot boxes and canvass of ballots will not lie on application of chairman of board of county canvassers — proper remedy is for board of county canvassers to secure statement filed with police department showing result of election and require election officers to complete return therefrom.

Where the inspectors of election properly canvass the vote in the manner provided by law and deliver to the police officer on duty a written statement of the result of the canvass, subscribed by the inspectors, correctly stating the number of votes received by each candidate for office at the election, but fail to fill out the official triplicate returns or to keep an official tally sheet, peremptory mandamus will not lie, on the application of the chairman of the board of county canvassers, to compel the production of the ballot boxes and envelopes containing the ballots and all void or protested ballots of the election district and to compel the inspectors to appear before the board of elections and proceed properly to canvass the ballots in the ballot boxes and envelopes and to file a return and tally sheet in accordance with the provisions of the Election Law.

There is no inherent power in the court to entertain a proceeding of this character and authorization therefor must be found in the express provisions of the Election Law, and the Election Law does not give any power to the court to order a recanvass of the ballots by the inspectors of election.

The tally sheet is not absolutely essential to the canvass of the vote, and so the proper remedy under the circumstances would seem to be for the board of county canvassers to send for the statement of the canvass of the vote

---

* Temporarily withheld from publication.— [REP.

of said election district, filed with the police department, and summon the election officers whose names are subscribed thereto and direct them forthwith to meet and fill in the matters omitted from the return filed with the county clerk, in accordance with the canvass of said votes, as it appears upon the statement made by them and filed with the said police department, and to certify to the said return in the manner provided by law. Said return shall then be and constitute the official return of the votes cast at the election and shall be canvassed as such by the board of county canvassers.

APPEAL by the Republican County Committee and Republican Nominees, intervenors, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 9th day of December, 1920, granting relator's motion that the ballot boxes and the packages of void and protested ballots in the eleventh election district of the third Assembly district be opened and canvassed by the canvassing inspectors, and that they file a return and tally thereof in accordance with the provisions of the Election Law.

*Leonard J. Obermeier*, for the appellants.

*John P. O'Brien, Corporation Counsel* [*Russell Lord Tarbox* of counsel; *William A. Walling, John F. O'Brien* and *George W. Olvany* with him on the brief], for the respondent.

PAGE, J.:

The New York county board of canvassers, of which the relator is chairman, met and organized pursuant to the Election Law for the purpose of canvassing the vote of the election of November 2, 1920. When the envelopes containing the returns from the eleventh election district of the third Assembly district were produced before said board and opened, it was found that the official return and tally sheets were in said envelopes but were entirely blank and failed to show the votes cast for the various candidates. The board of county canvassers thereupon summoned the canvassing inspectors of said election district and required them forthwith to meet and make corrections of their returns. The inspectors then stated that they could not complete and make out proper returns for the reason that they had failed to fill out the

returns and tally sheets and had no sources of information whatever which they could use as a basis for canvassing the vote and making proper returns. Thereupon the relator obtained an order requiring the said canvassing inspectors, the board of elections and the county clerk of New York county to show cause why a peremptory writ of mandamus should not issue directing the board of elections and the county clerk to produce and open the ballot boxes and envelopes containing the ballots and all void or protested ballots of the said election district, and directing the said canvassing inspectors to appear before the board of elections and proceed to properly canvass the ballots in the ballot boxes and envelopes contained, and to file a return and tally in accordance with the provisions of the Election Law. On the return of this order, attorneys for the Democratic and Republican county committees and nominees intervened. Affidavits of the canvassing inspectors were submitted in opposition to the motion, from which it appears that on the night of the election the said inspectors did canvass the vote in the manner provided by law, with the two important exceptions of filling out the official triplicate returns and keeping an official tally sheet; that in each instance a record was kept of all the votes counted, and public announcement made of the result; that a statement in writing of the result of the canvass was made, which was immediately delivered to the police officer on duty at the place of canvass in the said election district; that such statement was properly subscribed by the said canvassing inspectors and correctly stated the number of votes received by each candidate for office at the election.

The court granted the motion for a peremptory mandamus.

It is well settled that a proceeding of this character may not be entertained by virtue of an inherent power of the court, but must find authorization and support in the express provisions of the Election Law. (*Matter of Tamney* v. *Atkins,* 209 N. Y. 202, 206; *People ex rel. Cantor* v. *County Board of Canvassers,* 165 App. Div. 142, 144.) Section 374 of the Election Law (as amd. by Laws of 1916, chap. 537) provides that after the canvass is complete and the various acts required of the inspectors have been performed, the inspectors shall return the ballots voted, except the protested, void and wholly

blank ballots, to the boxes from which they have been taken; and each box shall be securely locked and sealed and deposited, together with the separate sealed package of unused official ballots, by an inspector designated for that purpose, with the officer or board furnishing it, which in New York city is, under section 341 of the Election Law (as amd. by Laws of 1916, chap. 454), the board of elections. " The boxes and packages so deposited shall be preserved inviolate for six months after the election, except that they may be opened and their contents examined upon the order of any court of competent jurisdiction or may be opened by direction of a committee of the Senate or Assembly to investigate and report upon contested elections of members of the Legislature voted for at such election and their contents examined by such committee in the presence of the officer having the custody of such boxes. * * *. Any candidate shall be entitled as of right to an examination in person or by authorized agents of any ballots upon which his name lawfully appeared as that of a candidate; but the court shall prescribe such conditions as of notice to other candidates or otherwise as it shall deem necessary and proper." Section 381 of the Election Law (as amd. by Laws of 1913, chap. 821) provides as follows: " If any statement of the result of the canvass in an election district shall show that any of the ballots counted at an election therein were protested or were canvassed as wholly blank or void, a writ of mandamus may, upon the application of any candidate voted for at such election in such district, within twenty days thereafter, issue out of the Supreme Court to the board or body of canvassers, if any, of the return of the inspectors of such election district, and otherwise to the inspectors of election making such statement, requiring a recanvass of such ballots. If the court shall, in the proceedings upon such writ, determine that any such ballot was improperly canvassed, it shall order the error to be corrected. Boards of inspectors of election districts, and boards of canvassers, shall continue in office for the purpose of such proceedings."

The power to regulate the canvass of the ballots and the subsequent disposition of them rests with the Legislature alone. Prior to 1896, all the ballots and memoranda of the canvass were destroyed immediately after the inspectors had

made up the statement of the result.* In the event of fraudulent returns made by the inspectors to the county board, it was difficult in the case of contest for the official, either before the courts on quo warranto proceedings or before the legistive committees on contested seats, to prove the actual vote cast in order that the will of the people as expressed by the vote might be given effect; also criminal prosecutions of such election officers were hampered. The Legislature has provided that the primary evidence, the ballots actually cast and counted, should be returned to the ballot boxes, except such as were protested, which with those not counted because of being marked for identification, void or entirely blank, were to be placed in envelopes. These boxes were to be securely locked and sealed, and the envelopes sealed and then deposited with an official to be preserved for six months. The Election Law then provides for the only conditions under which either the boxes or these envelopes can be opened.

1. The ballot boxes may be opened and their contents examined upon an order of the court. This provision " is not intended to confer upon a judge the power to capriciously order ballot boxes to be opened and examined, nor will it be so construed by the courts. The power is conferred to the end that it may be used in judicial proceedings pending or about to be commenced." (People ex rel. Brink v. Way, 179 N. Y. 174, 181.) This section gives no power to the court to order a recanvass of the ballots by the inspectors of election. The policy of the law is that, immediately on the close of the polls, the vote shall be publicly canvassed by the inspectors and the result announced and certified by the election officers and that this canvass shall be made simultaneously in all the election districts of the State. It is also required that the county canvassers shall promptly discharge

---

* See Consolidation Act (Laws of 1882, chap. 410), § 1898; Election Law (Gen. Laws, chap. 6; Laws of 1892, chap. 680), § 115, as amd. by Laws of 1895, chap. 810; Election Law (Gen. Laws, chap. 6; Laws of 1896, chap. 909), § 111; Election Law (Consol. Laws, chap. 17; Laws of 1909, chap. 22), § 373, as amd. by Laws of 1913, chap. 821; Id. § 374, as amd. by Laws of 1913, chap. 821, and Laws of 1916, chaps. 31, 537; Id. §§ 369, 376, 378, as amd. by Laws of 1913, chap. 821.— [REP.

First Department, December, 1920. [Vol. 199

their duty in order that the result may be certified to the Secretary of State or other officials, so that the result of the election may be known and certificates of election issued to those entitled on the face of the returns prior to the first day of the succeeding January, when their terms of office begin. It would be destructive of this policy to allow the county canvass to be halted, while court proceedings were pending, to compel the inspectors of various election districts to meet and recount the vote for any purpose. To recount presupposes the right to arrive at and declare a different result from that already declared and certified to; to re-examine the question of whether ballots were marked for identification or were void; and thus possibly change the result of the election as theretofore ascertained. That this cannot be done is settled. (*People ex rel. Brink* v. *Way, supra; Matter of Hearst* v. *Woelper*, 183 N. Y. 274; *People ex rel. March* v. *Beam*, 188 id. 266, 270; *People ex rel. Fiske* v. *Bantz*, 181 App. Div. 702, 704; affd., on opinion below, 222 N. Y. 676.) The relator relies upon *Matter of Stewart* (155 N. Y. 545). In that case the question involved was the issuance of a mandamus to compel the board of county canvassers to require the election inspectors to correct their returns in accordance with a concededly accurate tally sheet. The questions involved in the instant case were not present in that case. He also cites *People ex rel. Maxim* v. *Ward* (62 App. Div. 531), in which the Appellate Division of the Third Department reversed the court at Special Term and ordered the board of canvassers to reconvene and publicly take from the ballot boxes the ballots rejected by them as void at the time the votes were canvassed, and improperly returned to the ballot box without being indorsed, and properly indorse them and place them in a separate sealed package, indorse on the outside thereof their names as canvassers and the number of ballots contained therein and deposit the same with the town clerk. There was no recanvass of the votes ordered. All that was required was that certain ballots, which had not been counted and were wrongfully returned to the ballot box, should be separated from those that were counted, and dealt with in the manner that the law required. In view of later decisions, it is doubtful whether that case can be deemed a correct interpretation of the law, and in any

event it should be limited to the facts in the case. The case of *People ex rel. Maxim* v. *Ward (supra)* was cited and followed by the same Appellate Division in *People ex rel. Brink* v. *Way* (92 App. Div. 82, 87), which was reversed by the Court of Appeals (179 N. Y. 174). It is also cited as an authority in *People ex rel. Brown* v. *Freisch, No. 1* (168 App. Div. 370), which was reversed (215 N. Y. 356).

It is not necessary for us to discuss the question of the rights of candidates to an inspection of the ballots, for this proceeding is not instituted by a candidate, but by the relator as " a voter and as chairman of the board of county canvassers." Under the Election Law, a candidate does not have the right to a recanvass of the ballots in the ballot boxes, but only to a recanvass of those marked protested, void or blank (§ 381, as amd. *supra*).

It is urged that the court should exercise its power by way of mandamus, for the reason that there is no other way by which the returns can be completed and furnished to the county canvassers. There is of course no way that the tally sheet can now be reconstructed other than by a count of the ballots contemporaneous with the tally entered thereon. It is the original entry of the tally of the vote, and the Election Law provides (§ 368, subd. 1, as amd. by Laws of 1914, chap. 244) that the chairman of the board of inspectors shall announce the vote as therein prescribed on each section of each ballot in a loud and distinct voice, and that "as each vote is announced each poll clerk shall immediately tally it in black ink, with a downward stroke from right to left upon the official tally sheet provided for the purpose, also carefully tallying one for each blank or void vote." The purpose of this is to have an accurate record of the detail of the count made at the time each vote is announced. Such a record cannot now be made. If a recount were ordered and a tally sheet kept, it would be evidence of the tally of the recount, but would afford no evidence of the tally of the count on election night. And to have the inspectors make a tally sheet without a count, would be entirely futile, as it would be evidence of nothing.

That the tally sheet is not absolutely essential to the canvass of the vote appears from section 431 of the Election Law (as amd. by Laws of 1916, chap. 537). The law provides

(§ 378, as amd. by Laws of 1913, chap. 821) that one set of returns, with the tally sheet annexed, shall be filed in the office of the county clerk, and one set of returns, with the tally sheet annexed, shall be filed with the board of elections, and a third set of returns with the city clerk. Section 431 (as amd. *supra*) provides that if it shall be impossible to procure the original returns with the tally sheet annexed, the secretary of the board shall send a special messenger for or otherwise obtain or procure the other set of returns with the tally sheet annexed, " or, failing that, the third set of returns *without tally sheets*," and that the board shall proceed to canvass the votes cast in the county at the election. The board has had produced before it the three returns, and they are all blank. Section 372 of the Election Law (as amd. by Laws of 1918, chap. 323) provides: " The chairman of the board of inspectors shall, forthwith upon the completion of the count of votes and the announcement thereof, deliver to the police officer on duty at such place of canvass a statement subscribed by the board of inspectors, stating the number of votes received by each candidate for office and the number of votes cast for and against all questions, propositions or constitutional amendments submitted. Such statement shall forthwith be conveyed by the said officer to the station-house of the police precinct in which such place of canvass is located, and he shall deliver the same inviolate to the officer in command thereof, who shall immediately transmit by telegraph, telephone or messenger, the contents of such statement to the officer commanding the police department of such city or village. In a city of over one million inhabitants, such commanding officer shall cause all such returns to be immediately tabulated so that the final results may be known as early as possible, and within twenty-four hours of its receipt at the station-house such statement itself shall be filed with such commanding officer. Such statement shall be preserved for six months by the police, and shall be presumptive evidence of the result of such canvass for each such office."

Affidavits of the inspectors of election of this district were presented on the application herein that they had prepared, certified and delivered such a statement to the police officer on duty at the place of canvass to be transmitted by him to the station house; that such statement gave correctly the num-

ber of votes received by each candidate for office at the election; and upon information and belief that it was thereafter duly conveyed by the said officer to the station house of the precinct in which the place of canvass was situated and has been and is properly preserved.

There exists, therefore, an official statement of the result of the canvass of the vote in such election district, made in pursuance of law, duly certified as correct by the officials charged with the duty of making the canvass, and this statement can be produced from official custody. The law provides that it shall be presumptive evidence of the result of such canvass.

This is the only evidence in existence of the result of the canvass of the vote made by the inspectors immediately after the election of November 2, 1920, in the eleventh election district of the third Assembly district, and of necessity resort must be had to it. The board of county canvassers should send for the statement of the canvass of the vote of the said election district filed with the commanding officer of the police department of the city of New York and summon the election officers whose names are subscribed thereto and direct them forthwith to meet and fill in the matters omitted from the return filed with the county clerk, in accordance with the canvass of said votes, as it appears upon the statement made by them and filed with the commanding officer of the police department, and to certify to the said return in the manner provided by law, which shall then be and constitute the official return of the votes cast at said election in said election district, and shall be canvassed as such by the board of county canvassers.

The order is reversed and the application for a peremptory writ of mandamus is denied.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

Order reversed and application for peremptory writ of mandamus denied.