B. P. CURTIS *et al. v.* THE STATE, ON RELATION OF J. M. MORELAND.

(*Knoxville,* September Term, 1931.)

Opinion filed November 14, 1931.

Cox, Taylor & Epps, Dugger & Reece and R. C. Campbell, for plaintiff in error.

Divine & Guinn, J. G. Humphrey and T. E. Mitchell, for defendant in error.

Mr. Justice Swiggart delivered the opinion of the Court.

The relator, J. M. Moreland, and W. J. Fair were candidates for the office of Sheriff of Carter County at the August election, 1930. The defendants composed the board of election commissioners for the county. W. J. Fair was not made a party defendant. The commissioners of election issued a certificate of election to Fair, after canvassing the returns filed with them by the several election officers. Thereafter the relator instituted this action for the writ of *mandamus*, averring in the petition that the election returns showed a clear majority of the votes cast for the relator, and that the defend-

ants had fraudulently and incorrectly certified a majority in favor of Fair.

In response to the alternative writ, the defendants answered, asserting the performance of their duties in good faith, and their finding of the majority in favor of Fair. The original election returns were exhibited with the answer. Upon consideration of the pleadings, and particularly the original election returns, the circuit court found that votes cast and recorded for the relator had been incorrectly counted by the defendants for a third candidate, or rejected entirely as duplications, in sufficient number, if counted for Moreland, to give him the majority. The circuit court accordingly awarded the peremptory writ of *mandamus,* and also directed a reference to ascertain the amount of damages sustained by the relator on account of the incorrect certification of the result of the election by the defendants.

From the judgment of the circuit court the defendants have prosecuted their appeal in the nature of a writ of error to this court.

■ Defendants assert that the writ of *mandamus* was wrongfully awarded by the circuit court, for the reason that they, as the board of election commissioners, have once performed their duty of canvassing the returns and certifying to the result; that they have no power or authority to again canvass the returns and issue a second certificate of election, either voluntarily or in response to judicial process.

In *State, on the relation of Parkey,* v. *Carr,* 4 Tenn. Court of Civil Appeals Reports (Higgins), 435, a similar action for the writ of *mandamus* was successfully prosecuted, the judgment of the Court of Civil Appeals having been affirmed by this Court without written opinion.

In that case, however, it appeared from the answer of the election commissioners that they had canvassed only a portion of the election returns, and that the certificate issued by them was issued without canvassing some of the returns. The Court of Civil Appeals said: "It is no answer to this command (*mandamus*) to state that they had already issued a certificate to another person when in the same pleading it is shown that this certificate was issued before the commissioners had canvassed the returns as the law required. . . . It is their duty to examine the returns, notwithstanding alterations and mutilations, and to make an honest endeavor to certify the result that was shown or would have been shown by the returns in their unaltered condition."

Our examination of authorities in other jurisdictions discloses conflict as to whether a board, charged with the duty of canvassing election returns and certifying to the result, may be compelled by *mandamus* to reassemble and recanvass the returns, after they have once performed that duty, notwithstanding it be made to appear that the result certified is incorrect. The majority of the cases which seem to support the right to compel a recanvass and a new certificate are cases in which, as in *State ex rel. Parkey* v. *Carr, supra,* the original canvass omitted some portions of the returns, and was therefore not a complete performance of the duty of the canvassers. See cases collected in notes: 36 L. R. A. (N. S.), 1089; Ann. Cas. 1912D, 1254; 38 Corpus Juris 727 (Mandamus, sec. 327); 9 Ruling Case Law 1111 (Elections, sec. 115).

In the case before us, the petition does not charge that the election commissioners failed to consider any of the returns filed with them. The votes

which the petition claims were wrongfully excluded from Moreland's total appear on the returns from two precincts. In one of them, the Heaton Creek precinct of the second district, the list of candidates appears on two pages of the returns, and votes are tallied opposite the names of candidates on both pages. The election commissioners concluded that the officers of the election intended to certify only one of the pages, and that the second page is a duplication of the first. Therefore, they did not include in Moreland's total the tallies recorded on the second sheet of the returns for this precinct. In the seventh district the tally sheet records votes opposite the name of the relator which completely fill the space opposite his name. Fifty-three tallies appear on the line immediately below, opposite the name of a third candidate, but beginning in the middle of the page, with a space for about forty tallies left blank at the left margin. When the returns were filed with the defendants, these fifty-three votes were added in the total of Moreland's vote, but the election commissioners disregarded this entry of the total vote and counted the fifty-three tallies for the third candidate, opposite whose name they were entered.

This action of the election commissioners did not amount to a failure to consider and canvass the returns, but amounted to a construction or interpretation of the face of the returns which the petition insists, and the circuit court found, was erroneous. The answer of the defendants shows that they canvassed the fifty-three votes in question in the seventh district and counted them for the third candidate; and that they construed the questioned tallies on the returns for the second district as duplications, not intended by the election officers who made the returns to be counted as votes.

 It is not controverted but that the duties of the election commissioners, as a canvassing board, are ministerial in character, and as such subject to the writ of *mandamus*. *State ex rel. Stewart* v. *Board of Inspection,* 74 Tenn. (6 Lea), 12, 20; *Taylor* v. *Carr,* 125 Tenn., 235, 257, and cases there cited.

 But it is also true that some discretion must be reposed in the commissioners, when apparent inconsistencies or contradictions appear on the face of the returns, or they bear manifest indication of alterations made after leaving the hands of the election officers. It is not the office of the writ of *mandamus* to control the exercise of this discretion by the commissioners, unless it can be employed to forestall a threatened arbitrary and oppressive action. *Peerless Const. Co.* v. *Bass,* 158 Tenn., 518, 14 S. W. (2d), 723.

This was recognized by the learned judge who delivered the opinion of the Court of Civil Appeals in *State ex rel. Parkey* v. *Carr, supra.* We quote again from that opinion: "It is their duty to examine the returns, notwithstanding alterations and mutilations, and to make an honest endeavor to certify the result that was shown or would have been shown by the returns in their unaltered condition. *State* v. *Garesche,* 65 Mo. 480; *State* v. *McFadden,* 46 Neb. 668; 15 Cyc. 382. It is the duty of the commissioners, if they find an alteration, to make an effort to ascertain the condition of the returns as they appeared and were before this alteration; and if they find this difficult, they should reach some conclusion and report to the Court their investigation and their efforts."

And in *State ex rel. Stewart* v. *Board of Inspection,* 74 Tenn. (6 Lea), 12, 20, this court said:

"The specific duty of the board of inspectors, under the act of 1872, is to compare the vote as certified and forwarded to the Secretary of State by the sheriff of each county in the district, and declare the result. This duty, involving simply the labor of counting the votes returned and determining who has received the highest number of votes, is strictly ministerial. The board, it is true, determine whether the papers received, purporting to be election returns, are in fact such returns, are genuine, intelligible, and authenticated as required by law, and to this extent its duties are *quasi*-judicial. But it is universally conceded that such *quasi*-judicial duties do not affect the purely ministerial character of simply counting the votes and declaring the result. All the authorities agree that such a board of inspectors or canvassers may, as a general rule, be compelled to perform the ministerial duty by mandamus: High Ext. Rem., sec. 56 *et seq*. This court has so held: *Saffrons* v. *Ericson*, 3 Cold., 1."

In the case last cited, the Board of Inspectors refused to certify the result of an election because the returns recited the counting of one illegal vote, sufficient to affect the result. The court ruled that the decision of the election officers that the vote was illegal was binding upon the inspectors, and the writ of *mandamus* issued to compel them to certify the result, disregarding the illegal vote. The failure of the board to act in the first instance was with respect to matter as to which it had no discretion.

The answer in the case before us shows that the defendants complied with their duty to examine all the returns filed with them, to reach a conclusion thereon and make report. Having done this, their duty was fully performed, whether their conclusion be accurate

or not. They could not voluntarily recanvass the same returns and announce a different conclusion, with legal effect. And what they cannot voluntarily do, they cannot be compelled to do by *mandamus*.

In *State ex rel. Curry* v. *Wright*, 57 Tenn. (10 Heisk.), 237, the conclusion first reached by the canvassing commissioner was correct, and his second conclusion was based upon his wrongful exclusion of a portion of the election returns as illegal. But, in addition to finding error in the method of reaching the second conclusion, the court said: "The mental operation of computing the vote, and the manual act of issuing the certificate, exhausted his powers, and having once counted the vote, and issued the certificate to the relator, his functions and his duties were alike at an end." And again, in that case, the court said: "In the *People* v. *Head*, 25 Illinois, 328, it is said, they may perhaps judge whether the returns are in proper form, but after that they can only compute the votes and declare the result. And when their duty is done in this respect, says Cooley, they have no power afterwards to reconsider their determination and come to a different conclusion. Cooley Const. Lim., 623; *Hadly* v. *Mayor*, 33 New York, 603."

Reviewing the case last cited in *State ex rel. Anderson* v. *Gossett*, 77 Tenn. (9 Lea), 644, 649, the court said that in making his first canvass and computation of the vote, the commissioner "had exhausted his powers," and that his second conclusion and certificate were a "nullity," as well as a palpable fraud.

To again distinguish the case before us from *State ex rel. Parkey* v. *Carr*, *supra*, we again quote from the opinion in that case: "So that we have here the case of a party asking for a *mandamus* to compel the perform-

ance of a duty which has never been discharged. The authorities relied upon by learned counsel to the effect that no court will compel the doing over of that which has already been done are all sound, but they are not pertinent."

We conclude therefore that, while the election returns exhibited with the answer may show on their face that the conclusion reached by the commissioners was erroneous, the pleadings demonstrate that the ministerial duty to canvass the returns and declare the result was fully performed by the commissioners, and that they may not be required to reassemble, recanvass the same returns, and certify to a different result.

In this conclusion we conceive that the relator is denied nothing of substantive value. His right to the office of sheriff is as apparent from the face of the election returns as it would be if a certificate of election could be awarded him on a recanvass of the returns by the commissioners. "The title (to a public office) comes from the people through the election, and not through a commission of the executive, or other formality." *State ex rel. Gann* v. *Malone,* 131 Tenn., 149, 170-171, 174 S. W., 257. "The source and fountain of all elective offices in this state, is in the election itself. The votes of the people confer the title; the certificate, the induction or actual possession of the office do not confer the title. These things are the mere *indicia* to the right, but not the right itself." *State ex rel. Curry* v. *Wright,* 57 Tenn. (10 Heisk.), 237, 246, 253.

The relator, if in possession of a certificate of election, could assert his claim to the office by a proceeding for the writ of *mandamus* against the incumbent, to compel the recognition of his right and the surrender

of the office to him. *State ex rel.* v. *Grindstaff,* 144 Tenn., 554, 234 S. W., 510; *Peerless Const. Co.* v. *Bass,* 158 Tenn., 518, 523, 14 S. W. (2d), 732; *State ex rel. Thomas* v. *Davis,* 159 Tenn., 693, 697-698, 21 S. W. (2d), 623. But since the certificate of election would be no more than evidence of the result of the election as shown by the returns, and not the source of title, it is obvious that the incumbent as defendant would be entitled to impeach the certificate by the returns themselves, which under the authorities cited constitute the primary evidence of the election result. It follows that the relator's substantive right to the office could be asserted as successfully in such a proceeding for *mandamus,* when supported by the election returns, as if he were in possession of a certificate of election, the certificate being no more than *prima-facie* evidence of the result shown by the election returns. *State ex rel. Gann* v. *Malone, supra.* This relief cannot be awarded in the present action, since the incumbent of the office, to whom the certificate of election was awarded, is not a party to the suit.

In view of the conclusions reached herein, it is unnecessary that we express an opinion as to the merits of the contention that the returns of the election show a majority of votes for relator. The petition prays for a recovery of damages against the defendants, for wrong done to the relator, but such a recovery could not be awarded in a suit for the writ of *mandamus,* in the name of the state. "The people themselves are the plaintiffs in a proceeding by *mandamus.*" *State ex rel. Tidwell* v. *Morrison,* 152 Tenn., 59, 274 S. W. 551. The action is not available for the recovery of unliquidated damages by a private citizen.

It results that the judgment of the circuit court will

be reversed and the suit dismissed, at petitioner's cost. The original exhibits which are filed with the transcript will be returned by the clerk of this court to the clerk of the Circuit Court of Carter County, taking his detailed receipt therefor, to be held by him subject to disposal by order of the circuit judge.