STATE *ex rel.* ROBINSON *v.* HUTCHESON *et al.*

(*Knoxville*, September Term, 1942.)

Opinion filed May 8, 1943.

48

LEWIS S. POPE, of Nashville, for appellants.

CARLYLE S. LITTLETON, of Chattanooga, for appellees.

MR. JUSTICE NEIL delivered the opinion of the Court.

Solon L. Robinson and Wade H. Farmer were candidates for the office of County Judge of Bledsoe County in the general election held on August 6, 1942. On the face of the returns, as certified by the judges and officers. of election from the various voting precincts, they each received 804 votes. The election commissioners failed to have Robinson's name printed on the official ballot and voters throughout the county wrote his name on the ballot and in some precincts used printed stickers with his name printed thereon, which were attached to the ballot and a cross mark placed opposite the name, thereby indicating the voter's choice. On Monday following the date of the election, the county board of election commissioners met to canvass the returns. Before the returns were counted and tabulated and the result announced, Robinson filed a sworn petition addressed to the board in which he averred that at the Cold Springs Precinct he had received twenty ''sticker ballots'' which the judges had failed to count and tabulate and that the said judges desired to amend their original- certified returns by adding these ballots. The petition further alleged that Robinson received other legal votes that were not counted by the judges. An affidavit of two of the election judges and the officer of election was presented in support of the petition. The affidavit recites as a reason for not count-

ing these "sticker ballots" that they were "misinformed" as to the legality of said ballots and that "they are willing to count said legal ballots for petitioner and amend their returns so as to include said ballots which were excluded."

The county election commissioners refused to allow the election judges to amend their original returns as prayed for in the petition. Thereupon complainant filed his bill in the Chancery Court of Bledsoe County against the defendants to compel them to allow the returns to be amended and prayed for the issuance of the writ of *mandamus*. Shortly thereafter an amended bill was filed making Wade H. Farmer a party defendant. A demurrer was filed by all of the defendants upon the following grounds: (1) It is not alleged that these defendants have failed to perform or will fail to perform any duty imposed by law; (2) it appears from the face of the petition that on the face of the original certified returns of the precinct judges and officers there was a tie vote, and defendants having broken the tie vote and issued a certificate of election to Wade H. Farmer, they have exhausted their powers and are without power further to act, and this Court is without power to compel them to act; (3) that the two judges and officer of election were without power to amend their original returns and defendants were without power to allow them to amend, etc.; and neither these defendants nor this Court have power now to allow said amendment as prayed, and that defendants are without power to go behind the official returns.

It is further averred in the demurrer that: "This Court is without jurisdiction as a Chancery Court in this cause to go behind the face of the election returns, since that involves an election contest." Other grounds of de-

murrer not referred to are not important in determining the rights of the parties in this cause. We deem it wholly unnecessary to consider the question raised that the complainant was not duly qualified as a candidate for the office of county judge.

In 29 C. J. S., Elections, sec. 233, page 335, it is said:

"In the absence of any valid statutory limitation to the contrary, where election officers have completed the count, executed and delivered their returns, their powers and duties are at an end; they are without power to withdraw the returns, add to, change, or alter them, or to make a new return."

In *People* v. *Whalen,* 199 App. Div., 861, 193 N. Y. S., 45, 49, it is said:

"The policy of the law is that, immediately on the close of the polls, the vote shall be publicly canvassed by the inspectors, and the result announced and certified by the election officers, and that this canvass shall be made simultaneously in all the election districts of the state."

The question of the right of election officials to recount the ballots and make a supplementary return was considered in *Hearst* v. *Woelper,* 183 N. Y., 274, 76 N. E., 28, wherein the Court said:

"The Election Law . . . does not impose the duty, nor does it confer authority, upon election officers to reconvene on a day subsequent to the completion of a canvass made by them, and re-count the ballots cast at the election, and the courts have no power, express or implied, to compel such a re-count by *mandamus.*"

See *People* v. *Devermann,* 83 Hun., 181, 31 N. Y. S., 593.; also, *State ex rel.* v. *Knight,* 6 Houst. (11 Del.), 146, and *State ex rel.* v. *Wright,* 57 Tenn. (10 Heisk.), 237, 252, 253.

The foregoing authorities, we think, are based upon the soundest rules of public policy. Our election laws presumably throw around the ballot box the fullest protection against fraud, and unless the statute confers authority upon judges and officers of election to recount ballots and file amended returns, it necessarily follows that the courts will not compel or permit them to do so by writ of *mandamus*. The authority must be found in the statutes governing elections. The election laws in this state confer no such authority. Under the law it is the duty of all judges of election to count the ballots, "read aloud the names of the persons which shall appear upon each ballot," which are to be recorded by the clerks. The returns are then and there, after all ballots are canvassed and counted, certified by the said judges and officers, sealed and delivered to the officer to be by him delivered to the board of election commissioners. Section 1991 of the Code provides:

"Officer to deliver returns and ballots to commissioners, when.—It shall be the duty of the officer holding the election to deliver the polls or returns of the election sealed as received, together with the ballots cast in said election, to the commissioners of elections not later than 12 o'clock noon on the first Monday after the election."

The judges of the election, having certified the returns and sealed the same as required by law, have no authority thereafter to add to, change or alter them, or make a new return. And the county board of election commissioners are likewise without authority to make changes or allow the judges and officers of any election precinct to do so. For us to hold otherwise would be to open wide the door and provide the opportunity for the perpetration of every conceivable fraud. Indeed, it would be a monstrous thing, because destructive of the

government of a free people, for corrupt and designing election officials, seeing that the candidate of their choice is defeated, to be given the right to file amended and supplemental returns for the purpose of overcoming a possible majority.

Aside from the reasons advanced for disallowing the right of amendment and the authorities cited, we have uniformly held that *mandamus* is not the proper remedy in cases of this kind. In *Curtis* v. *State*, 163 Tenn., 220, 43 S. W. (2d), 391, the board of election commissioners, after canvassing the returns filed with them, issued a certificate of election to Fair. Thereupon Curtis filed suit for the writ of *mandamus*, averring that the commissioners had fraudulently and incorrectly certified a majority in favor of Fair. The commissioners answered, asserting that, having performed their official duty in good faith, they have no power or authority to again canvass the returns and issue a second certificate of election, either voluntarily or in response to judicial process. This contention was sustained by the Court after reviewing *State ex rel. Parkey* v. *Carr*, 4 Tenn. Civil Appeals (4 Higgins), 435, and other cases. The Court, speaking through Mr. Justice SWIGGART, says [163 Tenn., 227, 43 S. W. (2d), 393]:

"The answer in the case before us shows that the defendants complied with their duty to examine all the returns filed with them, to reach a conclusion thereon and make report. Having done this, their duty was fully performed, whether their conclusion be accurate or not. They could not voluntarily recanvass the same returns and announce a different conclusion, with legal effect. And what they cannot voluntarily do, they cannot be compelled to do by *mandamus*."

The principle thus announced is applicable to the instant case. The district election officials, having performed their legal duty by canvassing and certifying the returns, cannot be compelled to certify other and additional returns, nor can the county board of election commissioners be compelled to accept an amendment which is willingly offered by the said election officials upon any pretext whatsoever. Moreover, the county board has no authority to question the certified returns of election officials, even though such returns may show an additional vote. *Safrons* v. *Ericson,* 43 Tenn. (3 Cold.), 1. What has been done in the performance of a legal duty, although erroneous, is final, and the writ of *mandamus* will not lie to compel the doing over of that which has already been done. In *State ex rel. Caldwell* v. *McQueen,* 178 Tenn., 478, 159 S. W. (2d), 436, 437, the relator Caldwell and U. G. Reece were candidates for mayor of Butler, Tennessee. According to the certified returns by the returning officers, Caldwell had received 163 votes and Reece 165. The judges of the election rejected four ballots cast by absentee voters. These four ballots with reasons for rejections were delivered to the election commissioners in a separate container, along with the ballot boxes, scroll books, and tally sheets. The election commissioners proceeded to count the ballots which had been rejected by the judges of the election and issued a certificate of election to Caldwell, said ballots increasing his vote from 163 to 167. The Court held, opinion by Mr. Justice DeHaven:

"The action of the judges of election in rejecting the four ballots cast by absentee voters was of a judicial character and not subject to review by the Election Commissioners, who had but a ministerial duty to perform." (Citing cases.) It was further held that Reece's inter-

vening petition to compel the board, by writ of *mandamus,* to issue him the certificate of election was the proper remedy, because the said commissioners had never performed their legal duty; that the certificate of election issued to Caldwell was null and void.

Now what the complainant seeks to do in the instant case is to have the Chancery Court, under the writ of *mandamus,* compel the board of commissioners of Bledsoe County to recount ballots that had been rejected by the election judges and not included in their original certified returns. We will not compel them to do that which the law says they have no right to do, i. e., count ballots that were not included in the original certified returns. If the certified returns by election officials are the result of either fraud or honest miscalculation, the injured party has his remedy by contest in a court of competent jurisdiction.

Considering the question raised in the demurrer, that this is an election contest and the Chancery Court is without jurisdiction of the cause, we think the view entertained by the Chancellor is correct. The demurrer should be sustained upon that ground.

A careful reading of the record shows a controversy as to the validity of certain ballots cast at the Cold Springs Precinct. We are unable to decide, and it is not our duty in the instant case to do so, whether these so-called "sticker ballots" are legal or illegal. Moreover, it does not appear whether said "stickers" were handled by the election officials or by outsiders. There is nothing to show the circumstances under which they were attached to the ballots and marked by the voter. The original bill avers that in addition to the "sticker" ballots not counted for petitioner, there were "probably twenty-five" other ballots cast for him, the voter having

written the name of Solon L. Robinson thereon. It is averred, "These were legally cast for petitioner, but they were counted by said judges." The foregoing averment shows that the validity of the sticker ballots was not only in controversy, but other ballots as well. We find no merit in the contention of complainant (supported by the affidavit of two of the judges) "that the judges were misinformed as to their rights and duties, and they should have counted said ballots." There is nothing to show who it was who "misinformed" them, or from whom they sought advice. Having exercised their rights and performed their legal duties as election officials, they will not be permitted to contradict and defeat their original returns by any such averment. There is a presumption that they knew the law and that they acted accordingly.

The decree of the Chancellor sustaining the demurrer is affirmed.