PEELER *et al.*, COUNTY ELECTION COM'RS. TIPTON COUNTY,

v. STATE *ex rel.* BEASLEY *et al.*

(*Jackson*, April Term, 1950.)

Opinion filed June 9, 1950.

616

B. C. Durham, Jr., Robert Thomas, both of Ripley, and Andrew D. Tanner, of Nashville, for appellants.

L. E. Gwinn, of Memphis, and W. A. Shoaf, of Covington, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

This is a mandamus suit instituted by persons who hold permits to sell intoxicating alcoholic beverages in Tipton County. The Tipton County Election Commissioners were defendants. The suit is an immediate aftermath of an election held in Tipton County under Williams' Code, Section 6648.19 for the purpose of ascertaining whether the sale of such beverages would be continued in that county. The unofficial returns from all the voting precincts disclosed a majority in favor of such continuation.

When the Election Commission canvassed the vote for the purpose of certifying the result to the County Judge, a majority of its members decided to exclude all the votes cast at the Randolph and Wilkinsville voting precincts. The exclusion of these two precincts would result in a certification to the County Judge that a majority of the votes had been cast against a continuation of the sale of alcoholic beverages in Tipton County. The purpose of the suit instituted by those holding permits to sell intoxicating liquor is to require the election commission by mandamus to canvass all the returns, including those from the Randolph and Wilkinsville precincts, and certify to the County Judge the result shown by the returns from all the precincts.

The chairman of the commission filed a separate answer wherein he stated that in his opinion the act of the remaining two members of the commission in declining to include the returns from the two precincts mentioned was illegal, and that in his opinion it was the duty of the commission to include the returns from these two precincts in ascertaining the results of the election.

The other two members of the election commission filed a joint answer. These two will hereinafter be referred

to as respondents. The only reason assigned in that answer for their action in declining to consider the vote cast at the Wilkinsville box was that the return made by the election officers at that box disclosed a vote so large that the respondents were convinced that many illegal and fraudulent votes were cast there; hence, that they did not consider themselves to be under a duty to include in their computation any of the votes cast at that box.

As to the Randolph box, the answer of these respondents is that 222 of the 312 votes recited by the returns to have been cast there were illegal in that these 222 were either non-residents of the district or plural votes, or were recorded as voting when they did not actually attend the election, or had not paid the required poll tax. These alleged illegalities did not appear upon the face of the returns.

The Circuit Judge sustained the motion of the relators to strike the above allegations with reference to the two precincts from the answer of these respondents for the reason, among others, that the County Election Commission had no authority to go behind the returns of the officers holding the election, or consider the legality of the ballots cast in the election, since the duties of this commission were ministerial.

With further reference to the Randolph precinct, the answer of the respondents is that they did not consider the vote at that precinct because (1) the oaths of the officials signing the returns "were not fully or perfectly executed"; (2) the poll books, tally sheets and returns were not signed nor certified by the majority of the judges of said election at this precinct; (3) one of the poll books showed 307 votes cast at that precinct while the other showed 305 such votes, while the returns recited a total

vote of 312. The two poll books with the returns attached were made exhibits either to the bill or answer.

When the case came on for hearing the relators moved for peremptory writ of mandamus upon their petition as amended, the answer of the respondents, and all the pleadings.

In an unusually well considered opinion the Circuit Judge granted the motion and ordered the issuance of the peremptory writ of mandamus directing the election commissioners "to reassemble and canvass all of the precincts, including Wilkinsville and Randolph, and certify the result to the County Judge of Tipton County, Tennessee". The respondents appealed, and have filed assignments of error making the questions hereafter stated and determined.

The Circuit Judge was correct in striking from the answer of respondents all allegations with reference to their failure to consider the votes at these two precincts because they were of the opinion that a majority of these votes were illegal and fraudulent. It was the duty of the officers holding the election at these two precincts to determine whether those offering to vote were legal voters, and the legality of the ballots cast. The action of the precinct election officers in this respect was of a judicial character and not subject to review by the County Election Commission, whose duties are ministerial. *State ex rel. Caldwell* v. *McQueen,* 178 Tenn. 478, 482, 159 S. W. (2d) 436, and the cases there cited.

An examination of the poll books discloses that the election officials at the Randolph precinct signed the "before election" oath printed in the poll book, but the jurat was not signed by the one who may have administered the oath. So, the question at this point is whether

the election commissioners were authorized by reason of this omission to reject the vote at this box.

While *Browning* v. *Gray*, 137 Tenn. 70, 191 S. W. 525, is not in point here because, among other reasons, that was on a hearing of an election contest, an observation made in that case as to the failure of the officers in an election at one or more precincts to take the oath is pertinent. That observation, 137 Tenn. at page 75, 191 S. W. at page 526, is this:

"It would confer upon the officers holding the election power to defeat the election entirely, and thereby enforce their arbitrary will upon the community. This would be a perversion of the purposes of an election . . ."

The answer of respondents is that these oaths of the precinct election officers as to the returns "were not fully or perfectly executed", in that, although the oaths were signed by the officials, the jurat is absent. To this extent, it is said, the oath is not "strictly in accordance" with statutory directions. This seems to be an omission of the character contemplated by Code Section 2111 forbidding the rejection of a return because not "strictly in accordance with" statutory directions.

In any view which may be taken as to the absence of the jurat, the fact that the oath required by the statute was actually signed by the officials, it follows that the legal effect of the absence of the jurat to that signed oath when Code Section 2111 is considered, as it must be, is a judicial question; therefore, beyond the jurisdiction of the election commission as a canvassing board. Except insofar as some discretion is reposed in the commission to reconcile if it can, inconsistencies or contradictions appearing on the face of the returns, the duties of this commission are entirely ministerial.

*Curtis* v. *State ex rel. Moreland,* 163 Tenn. 220, 226, 43 S. W. (2d) 391.

The same principle, code section and rule applies to respondents' contention that they were justified in rejecting the vote at the Randolph precinct because the poll books and tally sheets and certificate of the votes cast "were not signed or certified by the majority of the judges of said election". These are in duplicate. Each was signed by only one of the three judges. One of the poll books, containing the tally sheets, delivered to the commission by some one not identified by the record, is signed by only one of the two clerks. The other such poll book delivered to the commission by the precinct officer in accordance with statutory directions, Code, Section 1991, is signed by both clerks.

The provision of the applicable statute, Code, Section 2094, is that a majority of the judges shall certify that the poll books kept by the clerks contain a true list of the voters and that certificate shall be attested by the clerks and officer holding said election. The election commission had before it the list of the names of the voters signed by one of the judges, two of the clerks, and the officer of the election. That is a majority of the election officers, though a minority of the judges. Both tally sheets clearly reflect it to be a fact that 307 votes were cast for the retention of liquor sales, and five against.

From the above recitation of the facts, it is apparent that this is not a case where there is no authentication of the returns. There is such authentication, and by a majority, but not all of those charged with the duty of authenticating the poll list. There is thus presented a situation which seems to come within the contemplation of Code, Section 2111 forbidding rejection of returns

that may be clearly understood though not strictly in accordance with statutory directions. It is a case wherein a decision to reject the returns on the ground that they are not properly authenticated would be a decision judicial in character; thus, a decision beyond the authority of the election commission.

 One of the duplicate poll lists contains 307 names; the other, 305. An examination of the face of these lists discloses that voters No. 115, 132 and 225, respectively, on the list kept by the clerk containing 307 names are not recorded on the other list, and that voter No. 304 on the list showing 305 names is not recorded on the list kept by the other clerk. There thus appears on the face of the voting lists the names of 308 voters. The duplicate set of returns disclosed that 312 votes were counted. This discrepancy is assigned by the answer of the respondents as another reason for rejecting the Randolph precinct vote in ascertaining the results of the election.

This discrepancy between the number who are recorded as voting and the number of ballots counted is a very minor discrepancy, considering the number of votes shown by the voting list to have been cast. It is inconceivable that all the voters at this precinct should be disfranchised by a majority of a board whose duties are purely ministerial because of so trivial a discrepancy.

The commissioners knew from the very face of all the returns before them that this trivial discrepancy could not possibly change the results of this election, unless it be concluded because of the discrepancy that the whole election at this precinct was permeated with fraud. Determination of the legality of the votes is beyond the authority of the board. "It can only count the votes

received, as shown by the returns". *State ex rel. Steward* v. *Marks*, 74 Tenn. 12, 24, "If the certified returns by election officials are the result of either fraud or honest miscalculation, the injured party has his remedy by contest in a court of competent jurisdiction". *State ex rel. Robinson* v. *Hutcheson*, 180 Tenn. 46, 54, 171 S. W. (2d) 282, 285, 168 A. L. R. 850.

 Finally, it is said by the respondents that the Circuit Judge erred in refusing to hear proof as to the frauds which they say were committed in this election at the Randolph precinct. In making this insistence, respondents overlooked the fact that the proceeding before the Circuit Judge was only one to compel the election commissioners to canvass the returns as certified by the election officers at all the voting precincts of the county. If the returns at the Randolph and Wilkinsville boxes are the result of fraud the remedy is by an election contest. Thus inquiry as to that is beyond the scope of this case, and is a question which the Court will not decide in this case instituted only for the purpose of compelling the election commission to perform its ministerial duty. *State ex rel. Parkey* v. *Carr*, 4 Higgins Court of Civil Appeals 435; *State ex rel. Robinson* v. *Hutcheson*, 180 Tenn. 46, 171 S. W. (2d) 282, 168 A. L. R. 850.

 The respondents say finally that they have performed their ministerial duty of canvassing the returns and certifying the result; therefore, they are without authority to again canvass these returns, and the Court is without authority to so require.

The record discloses that the respondents did not canvass or make a return of the votes at the Randolph

and Wilkinsville precincts for the reasons stated in their answer. Those reasons are held by this opinion to be legally insufficient. It therefore results that because of their failure to canvass the returns at the two precincts in question and include them in computing the final result, they have failed to discharge their full duty.

*State ex rel. Caldwell* v. *McQueen,* 178 Tenn. 478, 159 S. W. (2d) 436, after discussing other cases, holds that the Court does have the authority to compel a recanvass and the issuance of a new certificate in accord therewith when the original canvass omitted some portion of the returns. The McQueen case and *State ex rel.* v. *Carr, supra,* are conclusive upon this last insistence of respondents, and make it apparent that the Court below did not abuse its discretion in ordering the issuance of the peremptory writ directing the commission to re-assemble and canvass all the precincts, including the two in question, and certify the result to the County Judge.

The judgment of the Circuit Court will be affirmed, and costs of the appeal will be adjudged against respondents who appealed, to wit, J. A. Peeler, Jr., and H. H. Tatlock and the sureties on their appeal bond.

All concur.