On January 23, 1979, a special election was held pursuant to Act No. 386, Acts of Alabama, Regular Session 1978, Vol. 1, p. 358, to determine whether three unincorporated areas, designated by the Act as "West Area," "East Area," and "South Area," were to be annexed by the City of Montgomery. The Act, known as the Greater Montgomery Act, authorized the preparation of four separate poll lists, one to include all the qualified electors residing in the City and County of Montgomery and not included in the affected areas, and one each for the three affected areas. The Act also provided that the Judge of Probate certify the results of the election separately as to each group of electors in the four areas.
The results of the "City-County Area," "West Area," and "East Area" votes were certified on January 25, 1979, showing that the electorate of each of these areas had voted in favor of annexation. Certification of the "South Area" results was held up because, after delivery to the Judge of Probate of the original statement of canvass showing a narrow vote in favor of annexation, the Chief Inspector of Precinct 38 informed the Judge of Probate that a mistake had been made in tabulating the final vote.
Thereupon, Judge Walker Hobbie filed an action for declaratory judgment in Circuit Court to determine whether he, as Judge of Probate of Montgomery County, was authorized under the Act to certify results different from those indicated on the original statement of canvass delivered to him. This cause was dismissed by order of the Circuit Court on February 7, 1979, on the basis that the requested judgment was in the nature of an advisory opinion which the Court was without authority to render.
Thereafter, the original statement of canvass was changed and the results of the "South Area" election were certified by the Judge of Probate to show 192 votes in favor of annexation and 192 votes against. On February 14, 1979, the City of Montgomery filed a Petition for Writ of Certiorari, Mandamus, and other Extraordinary Writs in the Circuit Court, seeking an order directing the Judge of Probate to certify the "South Area" election results according to *Page 710 
the results of the original statement of canvass. The Circuit Court, subsequently, granted several motions to intervene on behalf of both the Plaintiff and Defendants in this case, including that of Intervenor/Appellant, Joe L. Reed, on behalf of the Defendants. On May 23, 1979, a writ of mandamus was issued to Defendant Hobbie requiring him to certify, on or before 12 o'clock noon on Friday, May 25, 1979, the "South Area" vote in accordance with the tabulation contained in the original statement of canvass.
Defendant/Intervenor, Joe L. Reed, appeals this order on the basis that the City of Montgomery lacked standing to contest the election results in the Court below. It is argued that, although Act No. 386 is silent on the question of contesting elections, "it is clear that with the exceptions noted in the Act, the legislature intended that those laws applicable to elections, etc., of members of the legislature apply." With respect to the contest of elections of persons to the House of Representatives, § 17-15-1, Ala. Code 1975, provides in part that:
 "The election of any person declared elected to the office of . . . representative in the legislature . . . may be contested by any person who was at the time of either of the said elections a qualified elector. . . ."
According to Intervenor/Appellant, the City of Montgomery is neither a person nor a qualified elector and, therefore, had no standing to contest the election results in the Court below.
We begin by noting that the City did not bring suit to contest the results of an election; rather, it sought an order of mandamus to compel a public official to do that which, as the City saw it, the law required the official to do. Moreover, assuming even that § 17-15-1, Ala. Code 1975, were otherwise apropos, we note that the Court below granted Rebecca Glasscock Tomlin's motion to intervene on behalf of the Plaintiff. Ms. Tomlin's status as a qualified elector is not disputed.
With respect to the substantive issue raised by this suit, we quote from the well researched and ably-reasoned order in the Court below:
 ". . . The duties of the canvassing body are discussed in Cosby v. Moore, 259 Ala. 41, 46
[65 So.2d 178] (Ala. 1953) as follows:
 `Canvassing the returns of an election is a ministerial act and when it is completed and the results declared an unsuccessful candidate may contest the election'.
* * * * * *
 `The canvassers are controlled by the returns of the inspectors and have no power to go behind them or inquire into fraud or irregularity, but they must add together the number of votes each candidate received in the several voting precincts, according to the certificates of the inspectors, and declare the results; and are subject to mandamus to compel a performance when necessary. Their duties are confined to computation'. (emphasis supplied).
 "Accord, Pope v. Howle, 227 Ala. 154 [149 So. 222] (Ala. 1933); Hudmon v. Slaughter, 70 Ala. 546
(Ala. 1881); Leigh v. State ex rel. O'Brannon [O'Bannon], 69 Ala. 261 (Ala. 1881).
 "In Ex parte Shephard [Shepherd], 172 Ala. 205, 213
[55 So. 627] (Ala. 1911), the Petitioner asserted that the inspectors changed the returns to make them speak the truth, and the Court observed:
 `The returns had been delivered to the returning officers. The law provides that, as soon as the ballots are all counted, the inspectors must ascertain the number of votes received for each person and for what office, must make a statement of the same in writing, which must be signed by them, and such statement, thus certified, must be sealed up in a box to be furnished by the Sheriff of the County, and immediately delivered to the returning officer of the Precinct. — Code 1907, § 415. Section 6816 makes it a felony for any inspector to make or sign a false copy of the certificate of result, or for any *Page 711 
returning officer to fail to deliver the certificate as delivered to him to the Probate Judge. In view of these provisions of the statute, it may be seriously doubted whether an inspector of election has any better right than any other individual to change the certificate for any purpose after it has been delivered to the returning officer, thus passing beyond the field of his official duty, or whether an inspector, who changes a certificate for the purpose assumed in the argument, does not lay himself liable to the penalty of the law'.
". . .
 "Once the inspectors certify the statement of canvass, seal and deliver the returns they have no authority thereafter to add to, change or alter them or make a new return — their duties are at an end. State ex rel. Robinson v. Hutcheson [180 Tenn. 46], 171 S.W.2d 282 (Tenn. 1943).
". . .
 "Based on the authority cited above this Court is compelled to the conclusion that the inspectors acted without authority and that the Board exceeded its authority, and that the certification of the result is without authority of law and void.
 "This Court previously expressed that the good faith of the election officials is not questioned and no improper motive imputed to them; however, for the Court to reach any conclusion other than that set out in this Order would open the door for possible fraud in the conduct of the election by designing and corrupt election officials, seeing that the candidate or proposition of their choice is defeated to be given the right to file amended and supplemental returns for the purpose of overcoming a possible majority. See Hutcheson at 284."
Intervenor/Appellant's argument that it is the duty of the certifying official to certify correct results is not without merit; however, we agree with the Court below that the integrity of the electoral process is better served by limiting the certifying official to the computation of final results and leaving questions of irregularity, error, or fraud to the procedures already set forth in law for contesting elections.
AFFIRMED.
All the Justices concur.