PER CURIAM.
This case comes to us on appeal from a final order of the Circuit Court of Greene County, finding that the appellant, Richard Osborne, was disqualified from serving as district judge of Greene County, and permanently enjoining the members of the Board of Supervisors from certifying him as newly elected to that position.
This litigation raises two precise issues:
1. Does the law of Alabama support the trial court’s conclusion that Osborne is ineligible for, and disqualified from, holding office under § 36-2-l(a)(3), Code 1975?
2. Does the plaintiff have an adequate remedy at law in this case, barring in-junctive relief?
The answer to the first question is yes; the answer to the second question is no. The judgment of the trial court is affirmed.
The pivotal facts in this case are as follows:
Richard Osborne and Ralph Banks, Jr., were candidates for district judge of Greene County in the Democratic Primary held September 7, 1982. Osborne was the victor and was certified as the party’s nominee. No other party offered candidates for that office. On October 12, 1982, Ralph Banks, Jr., learned that Osborne had been convicted of larceny in the municipal court of Montgomery in 1969, when Osborne was 21 years old. When he registered to vote in 1981, Osborne disclosed that he had been convicted of petty larceny and fined $50.00. He was registered at that time. On October 14, 1982, Banks contacted the State Democratic Executive Committee, stating that Osborne was disqualified from being a candidate for public office and requesting the Committee to name him (Banks) as the party’s nominee. The Committee, at first, set a hearing on the matter, but on October 27, 1982, reconsidered and decided not to pursue it. On October 28, 1982, Banks’s son, Ralph Banks, III, filed suit in his capacity as a qualified voter, taxpayer, and resident citizen of Greene County, asking for a preliminary injunction and declaratory relief. The hearing on the preliminary injunction was set for November 1, 1982, but when that day came, and service had not been obtained on Osborne, an application for a temporary restraining order was filed in open court. As a result of the hearing, a temporary restraining order was granted, restraining the defendant members of the Board of Supervisors for Greene County for the November 2, 1982 general election, and members of the board of registrars for Greene County, from posting, publishing, or certifying election results for the office of district judge, pending a hearing on the merits. Service was obtained on Osborne on November 5, 1982. In his answer, Osborne denied that he was ineligible to vote or hold office, and alleged that the complaint should be dismissed because plaintiff had an adequate remedy at law. He admitted, however, that as a youth, he had stolen hub caps in the City of Montgomery and had been convicted of this crime.
After a hearing on the merits, the trial judge, on November 19, 1982, issued the final judgment from which this appeal was taken.
The parties agree that in the general election of November 2, 1982, Banks received 626 write-in votes and after Banks then secured a conditional writ of mandamus from the circuit judge, sitting by designation in Greene County, the Board of Supervisors certified these votes to the Secretary of State. On December 20, 1982, Banks was proclaimed elected to the office of District Judge for Greene County, and is *697 now serving in that capacity. Banks then dismissed his suit for mandamus.
I.
First, we must compliment counsel for both sides for their excellent briefs and cogent arguments presented at oral hearing in this case. The briefs and arguments have served to sharpen our focus on the issues presented.
We now turn our attention to the first issue: Does the law of Alabama support the trial court’s conclusion that Osborne is ineligible to hold office under § 36-2-l(a)(3), Code, 1975? The resolution of this issue is purely a matter of statutory construction. What does the statute say? Code 1975, § 36-2-l(a)(l) and (3) states: “(a) The following persons shall be ineligible to and disqualified from holding office under the authority of this state; (1) those who are not qualified electors, except as otherwise expressly provided; ... (3) those who shall have been convicted of treason, embezzlement of public funds, malfeasance in office, larceny, bribery or any other crime punishable by imprisonment in the state or federal penitentiary and those who are idiots or insane.”
Also involved in our consideration of Issue I is an analysis of Article VIII, § 182, Constitution of Alabama, 1901. This section provides:
The following persons shall be disqualified both from registering and voting, namely: All idiots and insane persons; those who shall by reason of conviction of crime be disqualified from voting at the time of the ratification of this Constitution; those who shall be convicted of treason, murder, arson, embezzlement, malfeasance in office, larceny, receiving stolen property, obtaining property or money under false pretenses, perjury, subornation of perjury, robbery, assault with intent to rob, burglary, forgery, bribery, assault and battery on the wife, bigamy, living in adultery, sodomy, incest, rape, miscegenation, crime against nature, or of any crime punishable by imprisonment in the penitentiary, or of any infamous crime involving moral turpitude; also, any person who shall be convicted as a vagrant or tramp, or of selling or offering to sell his vote or the vote of another, or of buying or offering to buy the vote of another, or of making or offering to make a false return in any election by the people or in any primary election to procure the nomination or election of any person to any office, or of suborning any witness or registrar to secure the registration of any person as an elector. [Emphasis supplied.]
Counsel for Osborne forcefully argues that violations of municipal ordinances have been treated differently by our courts from violation of state laws. He draws strength for his argument from an attorney general’s opinion dated June 12, 1980,[1] which *698 concludes that conviction of a municipal ordinance would not disqualify a person from voting, even if such conviction would constitute a crime involving moral turpitude if prosecuted under state law. He argues that if we accept the premise that the attorney general’s opinion is sound, and that the conviction of a municipal ordinance cannot prevent one from voting, then we must conclude that such a conviction could not prevent one from being eligible to hold office under § 36-2-l(a)(l). This is because, by counsel’s analysis, one would be a qualified elector, thereby meeting the first requirement of § 36-2-l(a), Code 1975.
Although an attorney general’s opinion is entitled to great weight, it does not have the force and effect of law and is only advisory in nature. Associated Industries of Alabama, Inc. v. State, 55 Ala.App. 277, 314 So.2d 879 (Ala.Cr.App.1975). In any event, counsel’s argument gains Osborne nothing. A candidate for public office must show that he meets the eligibility requirements of all categories of § 36-2-1(a), including category 3, which the circuit judge found he did not meet. It is one thing to say that one is a qualified elector and another to say that one does not have any of the disqualifications of Section 3. The circuit judge thought section 3 to be broader than section 1, and we agree. We believe the requirement of an office holder to be more strenuous than those requirements to be a qualified elector.
Osborne further contends that violations of municipal ordinances are not considered serious crimes in the same way that violations of state laws are. For instance, his argument is very persuasive that a witness cannot be impeached by showing the conviction of a municipal ordinance, since these convictions do not involve moral turpitude. Caldwell v. State, 282 Ala. 713, 213 So.2d 919 (1968); Craig v. State, 50 Ala.App. 618, 282 So.2d 59 (1973). Also, he says that even though petty larceny is a crime involving moral turpitude under state law, it is not so serious under municipal law as to be entitled to the constitutional safeguard of a jury trial. Birmingham v. Evans, 53 Ala.App. 358, 300 So.2d 396 (1974); Mobile v. McCown Oil Company, 226 Ala. 688, 148 So. 402 (1933). And petty larceny is the very crime which is being held against him in the instant case.
Needless to say, we are not unaware of the fact that many states do not include misdemeanors as disqualification for holding public office. The disqualification is usually expressed in terms of conviction of a felony or other infamous crime.[2] For instance, in Elder v. County Election Board, 326 P.2d 776 (Okl.1958), a mandamus proceeding was filed to compel the county election board to place petitioner’s name on the ballot as a candidate for county commissioner where he had been disqualified by *699 the board because of having pleaded guilty to the federal offense of possession of a still, the distilling apparatus, and liquor upon which a federal tax had not been paid. Such an offense is a felony under federal law. However, the Oklahoma court held that although such a conviction was a felony under federal law and caused the loss of certain rights of federal citizenship, it was only a misdemeanor under Oklahoma law and petitioner was entitled to all of his civil and voting rights.
As we said earlier, resolution of Issue I is a matter of statutory construction. And, although the trend of our times is to increase the participation in the electoral process, both as to voting as well as to holding office, we believe the public policy of our state was set by Justice Stone’s decision for this court in Anderson v. State, 72 Ala. 187 (1882), and followed in Washington v. State, 75 Ala. 582 (1884). In the Anderson case, this court interpreted the meaning of Article VIII, Section 3, of the Constitution of the State of Alabama just some seven years after its passage. That section is very similar in terminology and in import to our present Article VIII, Section 182, of the Constitution of Alabama and the election qualification statute, Code 1975, § 36-2-l(a)(l) and (3). The ease involved whether Anderson was properly convicted on a charge of illegal voting because he had been convicted of petty larceny in a state court. Anderson argued that the statute did not cover petty larceny, since the word petty was not used in the statute. It also was not used in the laws we have under consideration. However, Justice Stone writes in Anderson:
We do not think there is anything in this objection. The provision of the constitution makes no exception, and we do not feel at liberty to engraft one upon it. Larceny is larceny, whether grand or pet-it; and we fail to perceive that the value of the thing stolen, whether a shade above or a shade below the dividing line, can enter into its moral criminality. The animus furandi determines the moral aspects of the question.
We can not assent to the proposition, that “the use of the word ‘other,’ before the generic term ‘crime punishable by imprisonment in the penitentiary,’ shows that the particular crime of larceny, which disqualifies, is that larceny which is punished by imprisonment in the penitentiary.” If that construction be sound, then the principle must equally apply to the other clauses, “malfeasance in office,” and “bribery.” Some grades of these are not punishable by imprisonment in the penitentiary; yet we think the intention was to visit disfranchisement on every grade of these offenses. Moreover, if the intention had been to disfranchise only convicted felons, it would have been much easier to employ that general and comprehensive term.
72 Ala. at 189. We believe that this decision states a policy of this state now, as well as then.
Although the attorney general’s opinion has weight and we do not pass upon its efficacy as to who is entitled to vote, nevertheless we believe the people of the State of Alabama wish the qualifications of elected officials to be a cut above the qualifications of registered voters. Our conclusion may have been different in this case if the petitioner did not have the opportunity to obtain pardon from either the mayor of the City of Montgomery, or the pardon and parole board. Because most of the petty larceny offenses are perpetrated by youthful defendants, we would not think it fair to hold them culpable forever for the indiscretions of their youth. If Mr. Osborne has truly overcome the dereliction of his youth, as apparently he seems to have done — having qualified as a lawyer, he certainly will be entitled to apply for a pardon. We agree with Judge Stone. Larceny is larceny and it makes no difference whether it is grand, petty, state or municipal. It is the intention of the actor, not the location of the crime that is the crucial consideration.
II.
Counsel for petitioner candidly agreed in open court that if we decided that conviction of petty larceny under a munici *700 pal ordinance is a disqualification from holding office, then he must lose his case. However, we proceed to address the second issue because if the trial court had no jurisdiction in the matter, there would have been no vehicle upon which we could have discussed Issue I. We believe the trial court did have jurisdiction. Bostwick v. Harris, 421 So.2d 492 (Ala.1982); Kinney v. House, 243 Ala. 393, 395, 10 So.2d 167 (1942).
In Bostwick and Kinney, this court held: “where matters pertaining to nominations are regulated by statute, questions of compliance with the' statute and infringement of the legal rights conferred are judicial; and the courts are not ousted of jurisdiction or bound by the decisions of party authorities with regard thereto.” 421 So.2d at 493; 243 Ala. at 395, 10 So.2d at 168. Here, the trial court sought to interpret § 36-2-1(a)(3), Code, 1975, dealing with who was eligible to hold a state office. Furthermore, Banks had attempted to get this determined by the Democratic Party, but was unable to do so; hence, his lawsuit. The lawsuit was filed at the earliest possible time, namely, one day after the Democratic Executive Committee decided it would not have a hearing on Banks’s claim under Rule 9 of their procedural rules.
In Perloff v. Edington, 293 Ala. 277, 302 So.2d 92 (1974), this court said: “If the committee or the chairman fail or refuse to follow the mandates of the statutes, the only recourse of either the contestant or the contestee is to the courts. In such cases, the courts are open.” 293 Ala. at 281, 302 So.2d at 96. Following that mandate, Banks carried his case to the courts and the courts, indeed, were open. For the foregoing reasons, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, AL-MON, BEATTY and ADAMS, JJ., concur.

. Boards of Registrars — Voters—
Disqualification from Voting
Violation of a Municipal Ordinance does not result in disenfranchisement.
Dear Mayor Dukes:
This is in response to your request for an opinion from this office regarding the effect of a violation of a municipal ordinance on a person’s right to vote. Specifically, you ask the following questions:
“1. Does a conviction of a violation of a municipal ordinance describing a crime which if prosecuted in the State Courts would involve moral turpitude, have the effect of disenfranchising that person so as to prevent him from registering and voting in elections?
“2. If the answer to question number 1 is yes, please advise whether or not in your opinion state law authorizes either the Municipal Judge or the Mayor of an Alabama city to restore political and civil rights without granting a full pardon as provided for in Section 12-14-15 of the 1975 Code of Alabama.”
As you are aware, Article 8, Section 182 (Constitution of Alabama 1901) states that persons who are convicted of a crime involving moral turpitude shall be disqualified from voting. There are no cases decided under this section concerning violations of municipal ordinances. However, there are a number of cases decided pursuant to Section 12-21-162 Code of Alabama 1975, which indicate that crimes involving moral turpitude do not include convictions for violations of municipal ordinances, but only convictions for violations of state law.
Section 12-21-162 provided that a witness may be examined affecting his credibility as to *698 whether he or she has been convicted of a crime involving moral turpitude. The Alabama appellate courts have repeatedly held that this section contemplates only convictions for violations of state law. Caldwell v. State, 282 Ala. 713, 213 So.2d 919 (1968); Birmingham v. Evans, 53 Ala.App. 358, 300 So.2d 396 (1974); Craig v. State, 50 Ala.App. 618, 282 So.2d 59 (1973).
In Birmingham v. Evans, supra, the Court of Criminal Appeals stated that, “The violation of a municipal ordinance or regulation is not a crime or criminal offense against the state, but only against the municipal corporation enacting the ordinance or regulation.” And in Craig v. State, supra, at 50 Ala.App. 621, the Court stated:
“A witness in a criminal case may be examined concerning his conviction for a crime involving moral turpitude. This rule applies to cases where defendants testify, however, to attack the credibility of a witness, based on criminal convictions, the questions should be phrased so as to exclude municipal offense convictions, since such convictions do not involve moral turpitude.” (Citations omitted.)
By analogy, the same reasoning would apply to Section 182 of the Constitution. Therefore, it is my opinion that conviction of a municipal ordinance will not disqualify a person from voting, even if such conviction would constitute a crime involving moral turpitude if prosecuted under state law.
Because the answer to the first question is in the affirmative, we do not reach the second question. [END OF ATTORNEY GENERAL’S OPINION.]

. See Annot., 39 A.L.R.3d 303 (1971); Annot., 53 A.L.R.2d 8, 13-14 (1957).