592 So.2d 546 (1991)
Reuben DAVIS
v.
George R. REYNOLDS, et al.
1900899.
Supreme Court of Alabama.
December 20, 1991.
*547 Richard F. Allen and Ellen M. Hastings of Capell, Howard, Knabe & Cobbs, P.A., Montgomery, for appellant.
James C. Barton and Robert S. Vance, Jr. of Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, for appellees George R. Reynolds, Probate Judge, Polly Conradi, Clerk of Circuit Court, and Sheriff Melvin Bailey, as members of the Jefferson County Bd. of Supervisors/Election Comm'n.
Michael L. Edwards, Marshall Timberlake and Victoria J. Franklin of Balch & Bingham, Birmingham, for appellee Jeff Germany.
SHORES, Justice.
The question presented here is whether the Jefferson County Election Commission should have revoked a certificate of election it had issued to the winner of an election for a local office because the winning candidate had violated certain provisions of the Fair Campaign Practices Act of 1988[1] by failing to timely file a statement designating his principal campaign committee after he became a candidate for election.
This Court first examined the basic facts of this dispute in Dunning v. Reynolds, 570 So.2d 668 (Ala.1990), and affirmed the trial court's dismissal of the complaint in that case. In that case, Etta E. Dunning, Jeff Germany's opposition in the Democratic Party's primary run-off election for Jefferson County Commission District One Commissioner ("commissioner"), sought a declaratory judgment and a writ of mandamus to have Germany's certificate of nomination revoked and his name removed from *548 the general election ballot for his failure to timely disclose his campaign contributions as required by law. A summary of Germany's actions follows:
January 31, 1990
Germany files summary of contributions and expenditures, showing that between October 10, 1989, and January 31, 1990, he received over $10,000 in contributions and made expenditures of over $7,000.
April 4, 1990
Germany files declaration of candidacy for the Democratic nomination in the primary election scheduled for June 5, 1990, declaring himself to be his principal campaign committee.
April 20, 1990
Germany files a subsequent summary of contributions and expenditures, beginning with a balance of approximately $5,000 and showing contributions beginning March 15, 1990, and expenditures beginning April 1, 1990.
June 5, 1990
Democratic primary election
June 26, 1990
Democratic run-off election between Dunning and Germany
November 6, 1990
Election for commissioner between Germany (Democrat) and Michael Jeter (New Alliance).
November 9, 1990
Election commission certifies Germany as the elected district one commissioner.
This Court affirmed the trial court's dismissal of Dunning's complaint in the Dunning case, on the ground that "[t]he record fails to show affirmatively that petitioner exhausted her remedies before the State Democratic Executive Committee prior to filing the instant action." Id. at 669.
In the present case, Reuben Davis, the incumbent Democratic commissioner, who was also a candidate in the June 5, 1990, primary election, sued the members of the Jefferson County Election Commission ("the Commission");[2] George Reynolds, as the probate judge of Jefferson County; Melvin Bailey, as the sheriff of Jefferson County; and Polly Conradi, as the clerk of the Circuit Court for Jefferson County, alleging that Jeff Germany was not a legally qualified candidate for the Democratic nomination for district one commissioner, because, Davis alleges, Germany had failed to timely file a statement naming his principal campaign committee; such a statement is required by Ala. Code 1975, § 17-22A-4, which reads in pertinent part as follows:
"Within five days after any person becomes a candidate for office, such person shall file with the secretary of state or judge of probate ... a statement showing the names of not less than two nor more than five persons elected to serve as the principal campaign committee ... but any candidate may declare himself as the person chosen to serve as the principal campaign committee...."
An election contest was filed with the Jefferson County Democratic Executive Committee relating to the primary election, and in July 1990 the Committee rendered an election contest opinion, finding that Germany had failed to name his principal campaign committee within five days after becoming a candidate for the Democratic nomination for the office of commissioner; nevertheless, the Committee certified Germany as the Democratic nominee upon his payment of a fine of $4,000. No appeal was taken to the State Democratic Executive Committee from that action by the Jefferson County Democratic Executive Committee, and no further judicial review was sought.
Germany was the successful candidate in the November general election, and on November 9, 1990, the Commission certified Germany as the elected district one commissioner. On December 21, 1990, Davis *549 made a demand on the Commission to revoke the certificate of election issued to Germany. The Commission refused. Subsequently, Germany filed a declaratory judgment action in the Jefferson County Circuit Court, seeking to confirm his certification by the Commission, asserting that his rights and the rights of the citizens would be affected and injured by an interpretation of the Fair Campaign Practices Act that would revoke his certificate of election. Davis filed a petition for the writ of mandamus along with his answer to Germany's complaint, asserting the same ground that Dunning had asserted in Dunning. Davis also asked for a declaratory judgment.
The trial court held that Davis's action was time barred by the 20-day statute of limitations set out in § 17-15-22. The court wrote:
"While the legislature repealed the Corrupt Practices Act ... when it enacted the Fair Campaign Practices Act, the Legislature did not amend § 17-15-22, the 20-day statute of limitations provision. If it was intended that a different statute of limitations should apply to violations of the Fair Campaign Practices Act, the Legislature could have included such a provision in the Act itself or could have expressly provided that § 17-15-22 would not apply when an election result was challenged on the grounds that there was a failure to comply with the Fair Campaign Practices Act."
We agree. Davis challenges Germany's election and argues that he is ineligible to hold the office. He became ineligible to hold the office, and thus was not eligible to hold the office he sought, this argument goes, on the sixth day after he became a "candidate," as defined by Alabama Code 1975, § 17-22A-2, because, the argument continues, he did not file a statement showing his principal campaign committee within five days as he was required to do by § 17-22A-4. A challenge to an election on grounds of ineligibility is an election contest under § 17-15-1, which provides:
"The election of any person ... may be contested ...:
"....
"(2) When the person whose election to office is contested was not eligible thereto at the time of such election."
This being the case, this action is controlled by § 17-15-22, which provides:
"All contests of elections provided for in this article must be commenced within 20 days after the result of the election is declared...."
Davis's challenge to the election of Jeff Germany to the office of member, County Commission, District 1, is barred by the applicable statute of limitations, and the trial court's order is affirmed on that ground.
In addition, the trial court also found that Davis's claim was barred by the doctrine of res judicata. Its judgment is affirmed on that ground as well.
Finally, the trial court found, correctly, that the Jefferson County Election Commission has no authority to revoke Germany's certificate of election.
We adopt the judgment of the trial court on each of these issues as follows:
"On April 4, 1990, Germany filed with the Democratic Party a written document declaring himself to be a candidate for the Democratic Nomination in the primary election scheduled for June 5, 1990, for the Office of Member, County Commission District 1. By that same document filed April 4, 1990, Germany appointed himself as his principal campaign committee to receive and disburse money contributed to his campaign.
"Section 17-22A-4, Alabama Code 1975, requires that the statement by Germany appointing his finance committee be filed within five days after the date when he becomes a candidate for office.
"On January 31, 1990, Germany filed with the Probate Court of Jefferson County, Alabama, a document styled, `Summary of Contributions and Expenditures,' showing that during the period from October 10, 1989, to January 31, 1990, Germany received contributions in the total amount of $10,750.00, and made expenditures totalling *550 $7,700.00, leaving him with a balance on January 31, 1990, in the amount of $4,950.00.
"In a subsequent summary filed with the Probate Court of Jefferson County on April 20, 1990 (a Pre-Election Summary), showing contributions beginning on March 15, 1990, and expenditures beginning April 1, 1990, Germany listed as his beginning balance the sum of $4,950.00.
"The Democratic Primary Election was held on June 5, 1990. The results certified by the Chairman and Secretary of the Jefferson County Democratic Executive Committee show the five candidates for the Office of Member, Jefferson County Commission, District 1, as receiving the votes shown as follows:

"CANDIDATE VOTES
"Jerry Coleman 2,647
"Reuben Davis 2,788
"Etta E. Dunning 3,504
"Jeff Germany 7,964
"David Merrida, Jr. 947

"While Germany received more votes than any other candidate, he did not receive a majority of the votes cast. Consequently, a primary run-off election was scheduled for June 26, 1990, with only the two candidates in the lead, Germany and Dunning. On that occasion, the votes received by the two candidates were as follows:

"CANDIDATE VOTES
"Etta E. Dunning 6,043
"Jeff Germany 8,400

"Following the run-off election, a contest of the election result was filed by Dunning with the Jefferson County Democratic Executive Committee (`Committee').
"Dunning asserted as the ground for her contest the same ground asserted now in the present case by Reuben Davis; namely that Germany became a candidate as defined in § 17-22A-2(1)(b), Alabama Code 1975, before he filed the form on April 4, 1990, declaring himself to be a candidate and appointing himself as his finance committee.
"Following a hearing conducted by the Committee, it found that Germany's January 31, 1990, filing showing an ending fund balance of $4,950.00, included funds raised by Germany to eliminate a campaign debt incurred by Germany in connection with his campaign to be elected in October 1989, to the Birmingham City Council.
"Because his report filed April 20, 1990, showed a beginning balance of $4,950.00, it was considered that this fund representing contributions made during 1989 was a fund raised in connection with Germany's decision to be a candidate for the Office of Member, County Commission. The opinion of the Committee stated in part:
"`At this Committee's hearing, Mr. Germany admitted (and it is reflected in his April 20 report of contributions and expenditures) that he had raised over $1,000 toward his candidacy for County Commission sometime prior to his official declaration of candidacy with the Democratic Party on April 4, 1990. It appears to this committee that, to meet the strict requirements of the Fair Campaign Practices Act, Mr. Germany should have filed a declaration for County Commission District 1 at the time he reached the $1,000 threshold of campaign contributions for his election to this office. This committee notes, however, that such a declaration of candidacy filed under § 17-22A-4 would not have altered the dates for Mr. Germany's filing his campaign contribution reports on April 20, filing five days before June 5 primary and filing five days before the June 26 run-off. Thus, his failure to make his declaration of candidacy prior to his April 4 declaration would not have changed the ability of the public to review his campaign's financial record. It simply would have required him to file an official declaration of candidacy and name a principal campaign committee at some time prior to his doing so on April 4, 1990.'
"In summary, the Committee concluded that a certificate of nomination should be issued to Germany, finding that he was in substantial compliance with the Act. The Committee imposed a fine of $4,000.00, apparently concluding that by doing so, candidates would be encouraged to comply with all aspects of the election laws of Alabama.
*551 "Following the decision of the Committee, Dunning and Jan Judkins, a resident voter, filed a complaint in this Court asking that this Court direct that Germany not be issued a certificate of election or nomination or, in the event that such a certificate of election or nomination had already been issued, that the same be ordered revoked.
"By decision rendered August 2, 1990, Circuit Judge Jack D. Carl concluded that this Court had no jurisdiction at that time to hear the case based upon the decision of the Supreme Court of Alabama in Ex parte Baxley, 496 So.2d 688 (Ala.1986). The complaint was dismissed for want of jurisdiction.
"On appeal to the Supreme Court of Alabama, the dismissal by the circuit court was affirmed. The majority opinion of the supreme court stated:
"`The complaint avers that on May 23, 1990, petitioner Jan Judkins filed a formal complaint with the Jefferson County Democratic Executive Committee challenging the qualifications of Germany. The record fails to show affirmatively that petitioner exhausted her remedies before the State Democratic Executive Committee prior to filing the instant action. Therefore, we find no error in the trial court's order of dismissal. Ex parte Skidmore, 277 Ala. 221, 168 So.2d 483 (1964).'
"Germany was then certified as the nominee of the Democratic Party for the Office of Member, County Commission District 1. At the election conducted on November 6, 1990, the three members of the Election Commission, George Reynolds, Polly Conradi and Melvin Bailey, certified the results of the election and the votes received by candidates for the Office of Member, County Commission District 1 as follows:

"Jeff Germany (Dem) 22,752
"Michael Jeter (New Alliance) 2,173
"Write-In 962

"On November 9, 1990, the Election Commission certified Germany as the elected officer for the position of Jefferson County Commissioner for District 1.
"No appeal was ever taken to the State Democratic Executive Committee by either Dunning, Judkins, or any other person. However, by letter dated December 21, 1990, addressed to the three members of the Election Commission, Richard F. Allen as the attorney representing Reuben Davis, demanded that the Board revoke the certificate of election issued to Germany on November 9, 1990, because of Germany's failure to name his principal campaign committee within five days after becoming a candidate in the Democratic Primary for the Office of Member, Jefferson County Commission District 1. As a result of Allen's letter, Germany commenced the present action seeking to resolve doubt and uncertainty regarding his status as the certified winner in the election for Jefferson County Commissioner, District 1.

"I. WHETHER DAVIS' CONTEST OF THE ELECTION IS BARRED BY THE TWENTY-DAY STATUTE OF LIMITATIONS SET OUT IN § 17-15-22, ALABAMA CODE 1975
"The procedure to be followed in contesting general elections is statutory and may be found in § 17-15-1 et seq., Alabama Code 1975.
"Section 17-15-1 provides in pertinent part as follows:
"`The election of any person declared elected to ... any office which is filled by the vote of a single county ... may be contested by any person who was at the time of either of the said elections a qualified elector for any of the following causes:
"`....
"`(2) When the person whose election to office is contested was not eligible thereto at the time of such election.'
"Thus, under § 17-15-1, one of the grounds contemplated for filing a contest of an election is the ineligibility of the person elected to office.
"The time within which a contest of an election must be filed is set out in § 17-15-22, Alabama Code 1975, which provides as follows:
"`All contests of elections provided for in this article must be commenced within 20 days after the result of the election is *552 declared, except as in this article otherwise provided; and at the time of commencing such contest and of the filing the statement in writing, the party contesting must give security for the cost of such contest, to be filed and approved as in this article provided.'
"If § 17-15-22 applies in the present case to the counterclaim filed by Reuben Davis, then his action to disqualify Germany comes too late. As this Court has previously noted, the Election Commission certified Germany as the elected officer for the position of Jefferson County Commissioner, District 1, on November 9, 1990. Consequently, under § 17-15-22, the contest was required to have been made by November 29, 1990. In the present case, Germany's complaint was filed on December 28, 1990. Assuming that Davis' counterclaim related back to the filing of the complaint, it still comes too late if § 17-15-22 is here applicable.
"It is the position of counsel for Reuben Davis that § 17-15-22 is not here applicable. Counsel for Davis says that there is no limitation period on the right to contest Germany's election. According to counsel for Davis, Germany's right to hold office as Jefferson County Commissioner could be challenged years after he assumed that office.
"In support of his argument, counsel for Davis refers to three decisions of the Supreme Court of Alabama, namely: Osborne v. Banks, 439 So.2d 695 (Ala.1983); Sears v. Carson, 551 So.2d 1054 (Ala.1989); and Reed v. City of Montgomery, 376 So.2d 708 [Ala.1979].
"In both Sears v. Carson, supra, and Reed v. City of Montgomery, supra, the dispute did not involve a question concerning the eligibility of a candidate or the procedure followed in conducting the election. Both cases involved the action of the election officials in counting the votes after the polling had ended.
"In Sears v. Carson, supra, Sears and Gibson were the two candidates seeking to be elected to the Town Council of Franklin, Alabama. The election was conducted on Tuesday, August 23, 1988. After the election, the election officials prepared a statement of canvass to deliver to the Franklin Town Council (which also served as the Canvassing Board). The statement said that Sears received forty-four votes (thirty-two by machine, eight by challenged ballot, and four by absentee ballot), and that Gibson received thirty-eight votes (thirty-three by machine, two by challenged ballot, and three by absentee ballot). Under § 11-46-55, Alabama Code 1975, the municipal governing body was required to open the envelopes not later than 12:00 noon on Wednesday, the day after the election, and determine the number of votes received by each candidate.
"The Canvassing Board did not meet by noon, August 24, 1988. On August 26, 1988, Sears obtained a writ of mandamus from the circuit court ordering the Board to count the votes and declare a winner by August 29, 1988. Initially, the Canvassing Board threw out all of the votes but the machine votes and declared Gibson the winner by a vote of thirty-three to thirty-two. Sears then filed another petition for writ of mandamus, which the circuit court initially denied. On reconsideration the court amended its original order of mandamus and required the Board to count all of the votes, including absentee and challenged votes by September 28, 1988.
"On September 27, 1988, the Town Council recanvassed the votes and declared Sears the winner. It issued Sears a certificate of election. On September 30, 1988, Gibson filed an election contest.
"Under § 11-46-69(b), Alabama Code 1975, the contest of the election was required to be commenced within five days after the result of the election was declared. The Supreme Court of Alabama concluded that the five days began to run from August 23, 1988. It reversed the judgment of the circuit court declaring in favor of Gibson and remanded the cause in order for the circuit court to declare the five-day time limit for Gibson to have expired, confirming Sears as the winner of the election. The supreme court stated that canvassing the returns was a ministerial act and that the canvassers are controlled *553 by the returns of the inspectors and have no power to go behind them or inquire into fraud or irregularity. According to the supreme court, the canvassers must add together the number of votes each candidate received in the several voting precincts, according to the certificates of the inspectors, and declare the results. They are subject to mandamus to compel a performance when necessary.
"Similarly, in Reed v. City of Montgomery, supra, an election was scheduled on the issue whether certain unincorporated areas were to be annexed by the City of Montgomery. After the election, the certification of the results was held up because after delivery to the Judge of Probate of the original statement of canvass showing a narrow vote in favor of annexation, the Chief Inspector of Precinct 38 informed the Judge of Probate that a mistake had been made in tabulating the final vote.
"In this case, the City of Montgomery filed a petition for writ of certiorari, mandamus and for other extraordinary writs in the circuit court seeking an order directing the Judge of Probate to certify the election results according to the results of the original statement of canvass. The supreme court held that the proceeding was not an election contest but merely an action to require the reporting of the results of the election. The supreme court stated that canvassing the returns of an election was a ministerial act and that the canvassers are controlled by the returns of the inspectors and have no power to go behind them or inquire into fraud or irregularity but must add together the number of votes each candidate received according to the certificates of the inspectors and declare the results.
"Neither of these two cases involves the contest of an election contemplated by § 17-15-1 et seq., Alabama Code 1975.
"In Osborne v. Banks, supra, Richard Osborne and Ralph Banks were candidates for district judge of Greene County in the Democratic Primary held September 7, 1982. Osborne was the winner and was certified as the nominee of the Democratic Party for that office. There were no other candidates. On October 12, 1982, Banks learned that Osborne had been convicted of larceny in the Municipal Court of Montgomery in 1969, when Osborne was twenty-one years old. On October 28, 1982, Banks' son, Ralph Banks, III, filed suit as a voter and taxpayer and resident citizen of Greene County seeking preliminary injunction and declaratory relief. A temporary restraining order was later granted when no service was obtained on Osborne. The temporary restraining order restrained the members of the Board of Supervisors of Greene County for the November 2, 1982, general election and also restrained the members of the Board of Registrars of Greene County from certifying election results for the office of district judge pending a hearing on the merits.
"After a hearing on the merits, the trial judge on November 19, 1982, concluded that Osborne was ineligible to hold office by reason of his conviction [of the] crime of petty larceny. A conditional writ of mandamus was issued by the circuit judge. The Board of Supervisors then certified that Banks received 626 write-in votes and on December 20, 1982, proclaimed Banks elected to the Office of District Judge for Greene County.
"Affirming the trial court, the Supreme Court of Alabama concluded that Osborne was disqualified from holding the Office of District Judge as a result of his conviction for the crime of petty larceny. Referring to § 36-2-1, Alabama Code 1975, setting out the various grounds which would render a candidate ineligible to and disqualified from holding office, the supreme court concluded that a person convicted of larceny, whether grand or petty, is disqualified by reason of § 36-2-1. It is implicit in the supreme court decision in Osborne v. Banks that the twenty-day statute of limitations set out in § 17-15-22 is not applicable where a challenge is made of a person's eligibility to hold office on grounds set out in § 36-2-1.
"However, the decision in Osborne v. Banks does not mean that the twenty-day statute of limitations set out in § 17-15-22 does not still have a field of operation. *554 While the legislature repealed the Corrupt Practices Act (§ 17-22-1 through § 17-22-15)... when it enacted the Fair Campaign Practices Act (§ 17-22A-1 through § 17-22A-23), the legislature did not amend § 17-15-22, the twenty-day statute of limitations provision. If it was intended that a different statute of limitations should apply to violations of the Fair Campaign Practices Act, the legislature could have included such a provision in the Act itself or could have expressly provided that § 17-15-22 would not apply where an election result was challenged on grounds that there was a failure to comply with the Fair Campaign Practices Act.
"Section 17-15-22 was first enacted as a part of the 1896 Alabama Code. It appears that the legislature recognized approximately ninety-four years ago that it was important to have questions involved in an election put to rest within a very short time. Otherwise, if attacks could be made on an elected official's right to hold office at any time while he remained in office, the result would be to destabilize the wheels of government. No officeholder could ever feel secure in his office, and many persons might be discouraged from ever qualifying for election to public office. Section 17-15-22 says in effect that a challenge of the qualification procedure or election procedure or the election itself must be made within twenty days of the date of the election or the challenge is barred.
"Counsel for Davis has also cited the decision of the Supreme Court of Alabama in Megginson v. Turner, 565 So.2d 247 (Ala.1990). In that case, Megginson had qualified for election as the nominee of the Democratic Party for election to the House of Representatives from District 102. On the challenge of his election as the Democratic nominee, the trial court found that Megginson had filed his statement naming his principal campaign committee more than five days after he filed his announcement and declaration of candidacy and therefore was in violation of § 17-22A-4. The trial court concluded that Megginson's name could not appear on the ballot for the general election because of his violation of § 17-22A-4. On appeal, the supreme court affirmed. However, the question of the applicability of § 17-15-22 (the twenty-day statute of limitations period) was not raised.
"Similarly, in David Barnes v. Perry A. Hand, Case No. CV 90-779-PA, in the Circuit Court for the Fifteenth Judicial Circuit of Alabama, David Barnes was a candidate for [a] seat in the House of Representatives of the Alabama Legislature. He failed to timely file his financial disclosure forms. For example, his purported disclosure for the primary election was filed four days too soon and failed to reflect a significant financial contribution received one day after the filing. His disclosure for the run-off was filed more than a month late. His disclosure for the general election was not filed until two days after that election. Although Barnes received a majority of the votes cast, the Secretary of State determined that Barnes had failed to file his pre-election financial disclosure reports before the Special General Election and refused to issue a certificate of election because of his violation of the Fair Campaign Practices Act. Here again, the applicability of § 17-15-22 (the twenty-day statute of limitations) was not raised or discussed.
"This Court therefore concludes that the present challenge made by Reuben Davis is barred because his challenge was not brought within twenty days after the results of the election of Jeff Germany were declared as required by § 17-15-22, Alabama Code 1975.

"II. WHETHER THE JEFFERSON COUNTY BOARD OF SUPERVISORS/ELECTION COMMISSION IS EMPOWERED TO DENY CERTIFICATION
"Counsel for the Election Commission also argues that the duties of the Election Commission are purely ministerial and confined to mere computation. Counsel cites a number of cases holding that the supervisors are clothed with no power to hear and determine complaints of the illegal registration or illegal voting; that the Election Commission are canvassers controlled by *555 the returns of the inspectors and have no power to go behind them or inquire into fraud or irregularity. The Supreme Court of Alabama has so held. See, e.g., Sears v. Carson, 551 So.2d 1054 (Ala.1989); Reed v. City of Montgomery, 376 So.2d 708 (Ala. 1979).
"Alternatively, this Court concludes that the Election Commission has no authority itself to refuse to certify a candidate elected to office on the ground that such candidate failed to comply with particular provisions of the Fair Campaign Practices Act.
"This Court finds it unnecessary to consider other grounds asserted by Germany in view of its decision that Reuben Davis' challenge is barred by § 17-15-22.
"In accordance with this opinion, it is hereby declared by the Court that Jeff Germany is the certified winner of the election for Jefferson County Commissioner, District 1.
"Jeff Germany also asks for an injunction enjoining the Election Commissioners from revoking his certificate of election. Such is unnecessary in view of the position of the Election Commissioners that they have no power to revoke Germany's certificate of election in any event.
"Each party shall bear his or their own costs. This order concludes all matters at issue in this case.
"Done this 11th day of January, 1991.
"/s/ Marvin Cherner
"CIRCUIT JUDGE"
The Fair Campaign Practices Act was enacted by the Legislature in 1988. Its primary laudable purpose was to require candidates for public office in Alabama to disclose campaign contributions and expenditures prior to elections. It repealed parts of the Corrupt Practices Act, § 17-22-1 et seq., which required disclosure only after the election. To accomplish this purpose, the legislature included sanctions for violation of the statute. For a failure to file a statement required by the statute prior to the election, § 17-22A-21 provides the harshest penalty of all:
"A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this Chapter."
Thus, any candidate who fails to file a statement that is required to be filed by the Fair Campaign Practices Act, prior to the election for the purpose of informing the voting public of the sources of his contributions and the subject of his expenditures, shall forfeit the election.
For the candidate who does not fail to file a statement before the election, but who files such a statement late, § 17-22A-22(b) prescribes and applies punishment in the form of a criminal penalty.
These two distinct sanctions, forfeiture of the election for those candidates who fail to file the disclosure statements required by the statute prior to the election, and criminal fines for candidates who file such disclosure statements prior to the election but not within the time prescribed by the statute, carry out the legislative intent of full disclosure before the election; but these sanctions do not require a candidate who discloses his contributions and expenditures before the election (but not within the time provided by the statute) to forfeit the election. That sanction is too harsh to visit upon a candidate who has not failed to file the statements required, but has merely filed them late. After all, this candidate is the candidate chosen by the people as their representative, even though his disclosure statement was filed untimely. The people's choice should prevail even if the candidate is in violation of the time constraints of the statute, if he files his disclosure statements prior to the election.
A fair reading of the Fair Campaign Practices Act leads one inescapably to the conclusion that the Legislature made a clear distinction between penalties that would apply to those candidates who fail to file disclosure statements and those candidates who merely file them late. It is not surprising that it did so. It was designed to differ from the Corrupt Practices Act, which provided only the harsh sanction of removal of the candidate's name from the *556 ballot.[3] The purpose of the Fair Campaign Practices Act is to aid the voting public in choosing its state and county officials. Its purpose is not to deny the voting public its choice of representative, even if he or she has failed to meet a statutory deadline for filing disclosure statements, so long as he or she nevertheless has filed the statements prior to the election.
The penal provisions of the Fair Campaign Practices Act have been addressed by this Court in only one case. In Megginson v. Turner, 565 So.2d 247 (Ala. 1990), this Court affirmed a trial court's ruling that Megginson could not be certified as the Democratic nominee because he had filed his statement naming his principal campaign committee more than five days after his announcement and declaration of candidacy. Megginson cited Jones v. Phillips, 279 Ala. 354, 185 So.2d 378 (1966); Owens v. Heartsill, 279 Ala. 359, 185 So.2d 382 (1966); Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967), and Kirksey v. Democratic Party of Alabama, 495 So.2d 638 (Ala.1986), as authority for its holding. However, those cited cases were decided under the Corrupt Practices Act, which did not provide the separate sanctions that the Fair Campaign Practices Act provides.
All candidates are, of course, subject to the five-day requirements of § 17-22A-4. If one fails to file a statement required by that section before the election, § 17-22A-21 applies the sanction: forfeiture of the election. If one files the statement required by § 17-22A-4 before the election, but not within the five days required by that section, § 17-22A-22(b) applies. To the extent that Megginson v. Turner, supra, holds to the contrary, it is overruled.
The Fair Campaign Practices Act marks a new day in Alabama campaign practices. It requires full and complete disclosure by all candidates for public office of the sources of all contributions and the subject of all expenditures. It requires this disclosure prior to the election. If it is not made before the election, the candidate may not be certified to the office if he wins the election, § 17-22A-21. It requires this disclosure shortly after one becomes a candidate. If it is not made within the time required, but before the election, the candidate is subject to the penalties provided by § 17-22A-22(b). Its purpose is to inform the voting public of the source of a candidate's financial support. This purpose is served by the sanctions provided for in the Act. This Court has no authority to enlarge the sanctions provided for in the legislation itself.
For the reasons stated above, the judgment of the trial court is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX and HOUSTON, JJ., concur in part and dissent in part.
MADDOX, Justice (concurring in part; dissenting in part).
When the legislature adopted the Fair Campaign Practices Act of 1988 ("FCPA") and repealed the Corrupt Practices Act (Chapter 22 of Title 17 of the Code of Alabama 1975), it intended to strengthen the laws relating to the reporting of campaign contributions. Although I concur in that part of the opinion holding that the action here is an "election contest," I cannot agree with the remainder of the opinion. The majority's interpretation of the Act, I believe, rewrites the plain words of the Act governing the reporting of campaign contributions. Consequently, I must respectfully dissent from that portion of the opinion.[4]
At first, I was of the opinion that the action filed here to seek revocation of a certificate of election was not an "election contest," and at first I thought that this action was not governed by the provisions *557 of Ala. Code 1975, § 17-15-22 (providing that a contest must be filed within 20 days "after the result of the election is declared,"), but after further study I have concluded that the legislature probably intended to place a 20-day limit upon actions seeking to have a certificate of election revoked. Consequently, I concur in the holding that the 20-day provision of § 17-15-22 applies.
I cannot agree with that portion of the opinion interpreting the reporting requirements of the new FCPA. I believe that the legislature, in passing the FCPA, intended to completely change the method of reporting campaign contributions and to correct an evil that had previously been permitted. Under the old law, a candidate could receive contributions, without reporting them, until he or she filed an official declaration of candidacy. As I read the FCPA, that is no longer permitted. I believe that the new FCPA makes a person a "candidate" when certain levels of contributions are received, or expenditures are made (§ 17-22A-2), whether the candidate has filed an official declaration of candidacy or not. That is precisely what Germany failed to do here. He was a "candidate," as a matter of law, before he filed his official declaration of candidacy.
Under the old Corrupt Practices Act, which was repealed by the FCPA, a "person" was not considered a "candidate" until an official declaration was filed. Under that law, a person could wait until the last day for qualifying to officially declare his candidacy and by doing so could receive substantial contributions without having to appoint a campaign committee or to report those contributions. Now, there are strict reporting procedures set out in the law. Ala. Code 1975, § 17-22A-8(a)(1).
The requirements of law regulating so-called "corrupt practices" in political elections have been strictly enforced. They were enforced against a candidate for the state senate who failed to file required forms with a probate judge, as required by law. Jones v. Phillips, 279 Ala. 354, 185 So.2d 378 (1966). They were enforced against a candidate for the state legislature who failed to file required forms with the probate judge. Owens v. Heartsill, 279 Ala. 359, 185 So.2d 382 (1966). They were enforced against a member of a black political party (Greene County Freedom Organization), because, as was the case here, a candidate did not comply with statutory requirements by filing a statement declaring the name of the committee to receive and disburse campaign funds. Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967). They were enforced against a Democratic candidate for the State Board of Education who failed to file with the secretary of state the required statement regarding the appointment of his finance committee. Kirksey v. Democratic Party of Alabama, 495 So.2d 638 (Ala.1986). They were enforced just last year in Megginson v. Turner, 565 So.2d 247 (Ala.1990), when this Court was faced with the identical legal question presented here, involving the identical statutes that are involved here. In Megginson, this Court stated that the provisions of § 17-22A-4 were "mandatory,"[5] and I can see no reason why that holding in Megginson, supported by substantial authority, should not be applied here.
*558 The FCPA defines a "candidate" and compels a candidate to disclose his or her financial contributions, whether an official declaration of candidacy has been filed or not. The Act defines a "candidate" as follows:
"(1) CANDIDATE. An individual who has:
"a. Taken the action necessary under the laws of the state to qualify himself or herself for nomination or for election to any state office or local office ... or
"b. Received contributions or made expenditures, or given his or her consent for any other person or persons to receive contributions or make expenditures, with a view to bringing about his or her nomination or election to any state office or local office. Provided, however, that no person shall be considered a candidate within the meaning of this subdivision until such time as he or she has either received contributions or expenditures as provided herein in the following amounts:
"....
"3. One thousand dollars or more, with a view toward bringing about a nomination or election to any local office."
§ 17-22A-2. Because of the plain words of this statute, Germany was a "candidate" when he received contributions of more than $1,000. Under the provisions of the Act, Germany should have filed his declaration for candidacy at the time he reached the $1,000 threshold of campaign contributions for his election to the office of district one commissioner.[6] The law does not permit a candidate to determine when he or she becomes a "candidate." The law specifically states when that event occurs, and when it does the filing requirements are thereby triggered. A failure to comply with those mandatory requirements of the law has previously resulted in severe sanctions. Megginson, Kirksey, Herndon, Owens, and Jones, supra. In Megginson, this Court clearly declared that because Megginson had failed to comply with the filing requirements of the FCPA he could not be the Democratic nominee.[7] The majority recognizes that Megginson is direct authority, but now overrules Megginson. The reasoning in Megginson is sound. Megginson is not wrong.[8]
In holding that "[t]o the extent that Megginson v. Turner, ... holds to the contrary, it is overruled," the majority has changed the law. The Court takes a step backward, rather than a step forward, thereby frustrating legislative intent rather than fostering it.
The majority shows this frustration of legislative intent when it construes the requirements of § 17-22A-21 as follows:
"If one files the statement required by § 17-22A-4 before the election, but not within the five days required by that section, § 17-22A-21 applies the sanction: forfeiture of the election. If one files the statement required by § 17-22A-4 before the election, but not within the five days required by that section, § 17-22A-22(b) applies."
Opinion at 556. I believe that this holding by the Court misconstrues legislative intent. In my opinion, any elector can file an election contest to challenge the eligibility of any candidate to be certified as the nominee or the person elected at a general *559 election, provided that challenge is timely filed. I also believe that a willful failure of a candidate to comply with the provisions of the FCPA could result in a criminal prosecution under § 17-22A-22. In fact, I think a quo warranto action might be an appropriate remedy if such an action is commenced as provided by law. Ala. Code 1975, § 6-6-591.
What is especially disturbing about the majority's opinion is that it states that insofar as an election contest is concerned, it makes no difference when a candidate files the required forms regarding the naming of a principal campaign committee so long as the required papers are filed "before the election." The interpretation placed on the FCPA by the majority opinion could completely frustrate the very purpose of the FCPA to require "candidates" to file and report as soon as they became candidates. Ala.Code 1975, § 17-22A-8. This Court is without authority to vary those terms. The majority's attempt to distinguish the decisions in Jones, Owens, Herndon, and Kirksey on the ground that "the Corrupt Practices Act ... did not provide the separate sanctions that the Fair Campaign Practices Act provides" seems to be based on a misconstruction of the Corrupt Practices Act. The Corrupt Practices Act provided for sanctions.[9]
This is the second time the candidate here has escaped the sanctions imposed by the FCPA. He escaped its sanctions in the primary election when this Court said it lacked jurisdiction.[10] He now escapes sanctions once again in the general election.
In the past, this Court has strictly applied the provisions of law against candidates for the state legislature and the state board of education, and I believe that the Court should apply the sanctions of the FCPA here. The provisions of the FCPA should be strictly applied, because its provisions are mandatory. Megginson, supra.
Had this challenge been filed within 20 days after the Commission certified Germany as the winner of the general election, I would hold that the Commission unlawfully issued Germany's certificate of nomination, and that it should have been revoked. Section 17-22A-21 states that a "certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked." Admittedly, this penalty set by the legislature is harsh, but the penalties applied in Jones, Owens, Herndon, Kirksey, and Megginson were also harsh. Based upon the foregoing, I disagree with those portions of the majority opinion interpreting the filing requirements and the sanction provisions of the FCPA. Had the challenge here been timely filed, I believe that the Commission would have had statutory authority to revoke Germany's unlawfully issued certificate; therefore, I respectfully dissent as to those portions of the opinion.
HOUSTON, J., concurs.
NOTES
[1] Alabama Code 1975, § 17-22A-4 ("Candidate to file statement showing principal campaign committee; candidate acting as own committee; duties and procedures; expenditures by candidate").
[2] Alabama Code 1975, § 17-14-2, provides that immediately after ascertaining the results of an election for county officers, the board of supervisors must make, in writing, a public declaration of the result and file an original certificate with the judge of probate. In Jefferson County, the "board of supervisors" is commonly known as the Jefferson County Election Commission, and it is composed of the judge of probate, the sheriff, and the clerk of the circuit court.
[3] §§ 17-22-5 and -6.
[4] Because the majority decides that the action was not timely filed, the portions of the opinion interpreting the provisions of the Fair Campaign Practices Act could be obiter dicta, but because the majority addresses the legal question, I also address it.
[5] In Megginson, the Court stated that, "[a]fter studying the record and the briefs of counsel and amicus curiae, [it concluded] that the trial court's ruling removing Megginson as a candidate [was] due to be affirmed, on the authority of the cases cited" in the following written order entered by the trial court:

"[T]he Court finds that Ken Megginson filed his statement naming his principal campaign committee more than five days after he filed his announcement and declaration of candidacy, contrary to the requirements of Section 17-22A-4 of the Code of Alabama requiring that the statement be filed within five days. The provisions of Section 17-22A-4 are mandatory. Since Ken Megginson failed to comply, [he] may not be certified as the nominee of the Democratic Party for House District 102 and his name may not appear on the ballot for the general election. Section 17-22A-4 of the Code of Alabama, Kirksey v. Democratic Party of Alabama, 495 So.2d 638 (Ala.1986); Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967); Owens v. Heartsill, 279 Ala. 359, 185 So.2d 382 (1966); Jones v. Phillips, 279 Ala. 354, 185 So.2d 378 (1966)."
565 So.2d at 248.
[6] Germany's April 20, 1990, summary of contributions reflects that he had raised over $1,000 toward his candidacy for county commission sometime prior to his official declaration of candidacy on April 4, 1990.
[7] I agreed with the majority in Megginson that the provisions of the FCPA were mandatory, but I did not agree that the Democratic Party, having failed to have a candidate nominated in the primary election, could fill the so-called "vacancy." See, Megginson, 565 So.2d at 249 (Maddox, J., dissenting).
[8] The opinion in Megginson does not show whether Megginson filed the required statement before the election, but the record in Megginson on file in this Court specifically shows that Megginson filed his declaration of candidacy with the secretary of state on April 6, 1990, but that he did not file the statement naming his principal campaign committee until April 17, 1990. The primary election was held on June 5, 1990. Megginson was unopposed in the Democratic primary. Consequently, the basic facts of Megginson are not different from the facts here and in the other cases cited in Megginson.
[9] Section 17-22-12 stated that a "certificate of election shall not issue" to a candidate who failed to file a statutorily required statement, and § 17-22-15 provided for criminal sanctions. Consequently, it appears to me that the sanctions in both the repealed Act and the new Act are basically the same.
[10] In Dunning v. Reynolds, 570 So.2d 668 (Ala. 1990), this Court affirmed a trial court's dismissal of the complaint because it lacked jurisdiction. That decision was, of course, wrong. See Dunning, 570 So.2d 668, 669 (Maddox, J. dissenting). On this appeal, Davis argues that a penalty imposed upon him by the party could not preempt the authority and duty of the Commission to impose sanctions for violation of the FCPA; a candidate who has been unlawfully issued a certificate of election cannot circumvent the clear intent of the law by asserting that a political party's fine substitutes for the penalties established by the legislature. As I said in my dissent in the Dunning case, "To vest in a political party the absolute power to enforce the sanctions, in my opinion, fails to carry out legislative intent." 570 So.2d 668, 671.