I concur fully with the main opinion. I write specially to emphasize the logical interplay of the various, and often disparate, election statutes that govern pre-election campaign financial disclosure, as well as jurisdiction to hear and determine disputes and also to provide available remedies for violations of those statutes.
As the main opinion notes, the beginning point for discussion in this matter is § 17-15-6, [10] Ala. Code 1975, which prevents a court from exercising jurisdiction over any proceeding seeking to *Page 480 
 "ascertain[] the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void. . . ."
(Emphasis added.)
The statutory jurisdictional exception, i.e., "save as it may be specially and specifically enumerated and set down by statute," is § 17-5-18 (formerly 17-22A-21), Ala. Code 1975, which states: "A certificate of election or nominationshall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of electionor nomination already issued to any person elected or nominated to state or local office who fails to file any statement or report required by this chapter shall berevoked" (Emphasis added.) It is clear from its language that § 17-5-18 is concerned solely with whether, depending upon a candidate's compliance with the pre-election reporting requirements of the FCPA, a certificate of election or nomination should properly be issued to that candidate in the event he or she wins the election, and if any such certificate has been issued and should not have been, whether that certificate should be revoked. Thus, the subject matter of § 17-5-18 falls squarely within the exception allowing a court to exercise jurisdiction if the procedure for doing so is "specifically enumerated and set down by statute," as provided in § 17-15-6.
The questions that necessarily follow a finding of a basis for subject-matter jurisdiction are: What remedy is available to challenge a certificate of election "sought to be inquired into or questioned," and what is the time limitation, if any, in which this remedy may be invoked? The answer to these questions does not lie within the FCPA; rather, it lies within election-contest provisions statutorily created for challenges in municipal, primary, and general elections.
The main opinion correctly points out that § 17-13-70 et seq., Ala. Code 1975 (formerly § 17-16-70 et seq.), provides for a contest to the result of a primary election and is also applicable to a contest to the result of a "second primary election," commonly called a primary runoff election, as provided for in § 17-13-18(b). Section 17-13-71(2) specifically states that a ground for a primary-election contest is "[w]hen a person whose nomination is contested was not eligible to the office sought at the time of the declaration of nomination." This Court stated in Harvey v.City of Oneonta, 715 So.2d 779, 780 (Ala. 1998), that "[u]nder the holding in Davis v. Reynolds, [592 So.2d 546 (Ala. 1991)], a candidate who does not file a statement or report required by the FCPA is ineligible to be elected to the office at the election." Although Harvey dealt with a municipal "election" rather than a "nomination" by a political party, the result concerning candidate eligibility is the same. Roper had an opportunity on both the day of the primary and the day of the primary runoff election to check the records in the office of the probate judge of Crenshaw County to ascertain whether Rhodes had fully complied with the reporting requirements of the FCPA and would have had 24 hours after the declaration of the results of each election in which to file a contest questioning *Page 481 
Rhodes's "eligibil[ity] to the office sought at the time of the declaration of nomination," based upon Rhodes's alleged failure to comply with the reporting requirements of the FCPA and the attendant consequences of § 17-5-18. Therefore, an election contest provides the "where" and "when" remedy to pursue a failure-to-file transgression of § 17-5-18 of the FCPA.[11]
The FCPA was designed to remedy the inadequacies of prior campaign-disclosure laws contained in the Corrupt Practices Act, which it repealed. The public has the absolute right to know who made contributions to a candidate for any political office, as well as to whom the candidate has made expenditures, and the only way that an act requiring disclosure is meaningful is if such disclosures are made before an election. Candidates who are late in complying with the reporting requirements of §§ 17-5-4, 17-5-5, and 17-5-8 (formerly §§ 17-22A-4, 17-22A-5, and 17-22A-8), as opposed to candidates who are in total noncompliance by a failure to file, are subject to the criminal penalties now contained in § 17-17-35(b), and I note that § 17-17-35(e) imposes a two-year statute of limitations for the prosecution of violations of these sections. In comparison, the penalty provided for in § 17-5-18, even though civil rather than criminal in nature, is more severe in its sanction, for the reason that the public has been totally deprived of this information by the candidate's failure to file before the day of the election. This sanction, the equivalent of an electoral death knell, strikes at the eligibility of the guilty party to receive a certificate of election and his or her privilege to take office and serve the public trust. Therefore, this issue should be decided early, as election-contest procedures so provide, to prevent an ineligible person from taking and holding office improperly for any length of time.
[10] When Title 17, Ala. Code 1975, was reorganized following the enactment of Act No. 2006-570, Ala. Acts 2006, § 17-15-6 became § 17-16-44. See note 2 in the main opinion.
[11] I note that there may be practical differences between municipal elections (as in Harvey), primary elections (as herein), and general elections. Of the three types of elections, only general elections permit write-in candidates. See §§ 17-6-27 and 17-7-21(b)(8) (formerly §§ 17-8-5 and 17-24-3(b)(8)) for general elections and § 11-46-25(g) and (h) for mayor-council elections. Therefore, only in general elections are unopposed candidates required to have their names printed on election ballots and stand for election, because a write-in candidate could conceivably win the election by receiving more votes than did a party nominee or independent candidate whose name appears on the ballot. However, because there is no statutory provision for write-in voting in either municipal or primary elections, a candidate who is the only person who qualifies for mayor or a council position in a municipal election, or a candidate who is the sole qualifier for any elected position in a partisan primary election, is the automatic winner of the respective office or nomination and is not listed as a candidate on the ballot in the election. However, the issue of an unopposed candidate who violates a mandatory FCPA provision is not before the Court in this proceeding.